HELMS CONSTRUCTION AND DEVELOPMENT CO., a Nevada Corporation; and JACK B. PARSON CONSTRUCTION COMPANY, a Utah Corporation, Appellants, v. STATE OF NEVADA, on Relation of its Department of Highways, Respondent.

No. 11365

October 26, 1981                                      634 P.2d 1224

*Petersen & Petersen,* Reno, and *Taylor & Ulin,* Seattle, Washington, for Appellants.

*Richard H. Bryan,* Attorney General, and *William M. Raymond,* Deputy Attorney General, Assistant Chief Counsel, Department of Highways, Carson City, for Respondent.

## OPINION

*Per Curiam:*

In this appeal, we are asked to decide whether the trial court erred in denying appellants' price adjustments on their contracts with the Nevada State Highway Department.

In 1972, appellants bid for and received contracts with the State Highway Department. During the performance of one of the contracts and shortly before commencement of the second, the Arab bloc nations imposed an oil embargo, dramatically increasing the cost of petroleum-based products. Appellants completed the contracts and submitted claims to the Highway Department to recover these increased costs. Helms' claim was for $97,048.56 and Parson claimed $37,088.88. The state rejected both claims, the district court denied appellants' declaratory relief and Helms and Parson appealed to this court. Appellants seek reversal asserting, *inter alia,* that the

trial court erred in determining that appellants were not entitled to recover increased costs pursuant to the terms of the contract or pursuant to the doctrines of commercial impracticability or impossibility of performance or mutual mistake. Finding no error, we affirm.

The trial court found that the Uniform Commercial Code doctrine of commercial impracticability, NRS 104.2615,[1] was inapplicable, and in view of the fact that this case involves performance contracts and not sales contracts, we agree with that determination.

Alternatively, appellants contend that the common law doctrine of commercial impracticability or impossibility of performance should afford the same relief as the Uniform Commercial Code provision. Although we recognize that the statutory doctrine of commercial impracticability "[has] its roots in the common law doctrine of frustration or impossibility," Eastern Airlines, Inc. v. Gulf Oil Corp., 415 F.Supp. 429, 438 (S.D.Fla. 1975), appellants fail to demonstrate commercial impracticability or impossibility under either the statutory or common law standards.

In Nebaco, Inc. v. Riverview Realty Co., 87 Nev. 55, 57, 482 P.2d 305, 307 (1971), we noted that performance would be excused if the promisor's performance "is made impossible or highly impractical by the occurrence of unforeseen contingencies [citation], but if the unforeseen contingency is one which the promisor should have foreseen, and for which he should have provided, this defense is unavailable to him." [Citations].[2]

The Arab oil embargo, although perhaps not within the contemplation of the parties, has been held by other courts to have

---

[1]NRS 104.2615:

> Delay in delivery or nondelivery in whole or in part by a seller . . . is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency, the nonoccurrence of which has a basic assumption on which the contract was made. . . .

[2]The doctrine of impossibility or impracticability is usually invoked to excuse non-performance. However, "there is nothing necessarily inconsistent in claiming commercial impracticability for the method of performance actually adopted; the concept of impracticability assumes performance was physically possible. Moreover, a rule making non-performance a condition precedent to recovery would unjustifiably encourage disappointment of expectations." Transatlantic Financing Corp. v. United States, 363 F.2d 312, 315 n. 1 (D.C.Cir. 1966).

been "reasonably foreseeable." Eastern Airlines, *supra,* at 441; Missouri Public Service Co. v. Peabody Coal Co., 583 S.W.2d 721, 728 (Mo.App. 1979). Furthermore, in order for an unforeseen cost increase to excuse performance, the increase "must be more than merely onerous or expensive, it must be positively unjust to hold the parties bound." Eastern Airlines, *supra,* at 438. *See also* Publicker Industries, Inc. v. Union Carbide Corp., 17 U.C.C. Rep. 989, 992 (D.C.E.D.Pa. 1975). In the instant case, Parson prays for a sum equivalent to .6 of one percent of its total contract and Helms prays for a sum amounting to 2.7 of its bid. Such costs overruns do not render performance of the contract commercially impracticable.

Appellants also urge that the contract is subject to reformation under the doctrine of mutual mistake. Reformation is available as an equitable remedy to a party seeking to alter a written instrument which, because of a mutual mistake of fact, fails to conform to the parties' previous understanding or agreement. Sperry Rand Corp. v. United States, 475 F.2d 1168, 1174 (Ct.Cl. 1973); National Presto Industries v. United States, 338 F.2d 99, 106 (Ct.Cl. 1964). There is nothing in the record of the instant case, however, to indicate that the parties at any time entertained an express or implied agreement concerning petroleum price increases and concomitant contract modifications; nor can belief in the continuing availability of reasonably priced oil be perceived as a mutual mistake of fact in this case.

Appellants' remaining assignment of error—that the contract terms provide for the relief sought—is without merit. Thus, finding no basis in law or equity for appellants' recovery, we affirm the judgment of the trial court.