CHEQER, INC., Appellants and Cross-Respondents, *v.* PAINTERS AND DECORATORS JOINT COMMITTEE, INC.; PAINTERS AND DECORATORS JOINT APPRENTICESHIP COMMITTEE; THE COMMITTEE MEMBERS OF THE PAINTERS AND DECORATORS JOINT APPRENTICESHIP COMMITTEE; TOM MILLIS; DOUG LUND; LARRY CARDWELL; DAN ARCOTTA; I.B.P.A.T. UNION AND INDUSTRY NATIONAL PENSION FUNDS; RICHARD MEYERS, ADMINISTRATOR TO THE I.B.P.A.T. UNION AND INDUSTRY NATIONAL PENSION FUNDS; PAINTING AND DECORATING VACATION FUND OF LOCAL NO. 159; THE REPRESENTATIVES OF THE PAINTING AND DECORATING VACATION FUND OF LOCAL NO. 159; ROBERT VALERI; RAY G. CLEGG, Sr.; T. P. MINEHAN; JAMES R. KAISER; LAWRENCE E. GOVE; CHESTER RANKIN; EUGENE COLAN; HARRY HOLLAND; PAINTING AND DECORATING WELFARE FUND OF LOCAL NO. 159; THE REPRESENTATIVES OF THE PAINTING AND DECORATING WELFARE FUND OF LOCAL NO. 159; ROBERT VALERI; RAY G. CLEGG, Sr.; T. P. MINEHAN; JAMES R. KAISER; LAWRENCE E. GOVE; CHESTER RANKIN; EUGENE COLAN and HARRY HOLLAND, Respondents and Cross-Appellants.

No. 13239

December 30, 1982                    655 P.2d 996

*Keefer, Clark, O'Reilly & Haight,* and *Mark Ferrario,* Las Vegas, for Appellants and Cross-Respondents.

*Marquis & Haney,* Las Vegas, for Respondents and Cross-Appellants.

## OPINION

By the Court, GUNDERSON, C. J.:

Appellant and cross-respondent, Cheqer, Inc., was a general contractor who hired a subcontractor, Taylor, Inc., to perform work on a Cheqer project. Taylor in turn entered into a collective bargaining agreement with the Painters and Decorators Union. Under the terms of this collective bargaining agreement, Taylor was obliged to make certain fringe benefit contributions to respondent and cross-appellant Painters and Decorators Joint Committee (Committee) as part compensation for members of the Painters and Decorators Union employed by Taylor on the Cheqer project.

While engaged in the work, however, Taylor suffered financial difficulties, and failed to make the fringe benefit contributions for the months of November and December, 1978, and January, 1979. Although Committee was aware Taylor had failed to make the fringe benefit contributions, it did not inform Cheqer of Taylor's delinquency. Cheqer continued to pay Taylor pursuant to its subcontracting agreement sums intended to cover the fringe benefit contributions.

Taylor's financial difficulties forced it to file for bankruptcy in mid-January, 1979. Following the filing of Taylor's bankruptcy petition, Committee made a written demand that Cheqer make payment of the delinquent fringe benefit contributions pursuant to NRS 608.150.[1] Cheqer, having already paid Taylor all sums due and owing under the subcontracting agreement, refused Committee's demand, and Committee brought the instant action.

After discovery, Committee moved for summary judgment pursuant to NRCP 56, claiming that NRS 608.150 was dispositive on the issue of Cheqer's liability. Cheqer moved that Committee's motion be denied, and moved in turn that summary judgment be entered for Cheqer on the grounds that Committee's alleged breach of the collective bargaining agreement with Taylor relieved Cheqer of all obligations under the agreement. Alternatively, Cheqer argued that Committee was estopped from enforcing any obligation under the agreement due to its failure to give timely notice of Taylor's default on the fringe benefit contributions.

Cheqer's motion for summary judgment was denied, and Committee was granted partial summary judgment as to liability. A special master was appointed to determine the exact amount owed to Committee, which was established to be $16,349.82. After moving to confirm the master's report and for summary judgment, Committee also moved for an award of attorney's fees. Judgment in the amount of $16,349.82 was entered, with costs. Committee, however, was denied attorney's fees; in its cross-appeal, it challenges the district court's denial of the motion for attorney's fees.

---

[1]NRS 608.150 provides in pertinent part:

1.  Every original contractor making or taking any contract in this state for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and be held liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor in performing any labor, construction or other work included in the subject of the original contract, for labor, and for the requirements imposed by chapter 616 of NRS.

## CROSS MOTIONS FOR SUMMARY JUDGMENT

Before turning to a discussion of the substantive issues presented in this appeal, we will first address certain procedural questions which were raised in the course of oral argument. It is initially noted that both Committee and Cheqer filed motions for summary judgment. This court has previously taken the position that where both parties to an action file such cross motions for summary judgment, they may in effect be held to have stipulated that there are no genuine issues as to any material fact remaining for trial. In City of Las Vegas v. Cragin Industries, 86 Nev. 933, 478 P.2d 585 (1970), we stated:

> Because all the parties moved for summary judgment, the trial court was at liberty to find that the parties had conceded that there remained no material question of fact and that the case could be determined on a question of law. Although the trial court did not specifically find that there remained no genuine issue of fact, the appellants, in their motions for summary judgment, both alleged that there is "no genuine issue as to any material fact" and *they are now precluded from changing their positions upon this appeal.* [Citations omitted.]

(Emphasis added.)

This broad language arguably authorized the trial court's conclusion that both Cheqer and Trustees had conceded there remained no genuine issues as to any material fact when they filed their cross motions for summary judgment. It appears, however, that the language set forth in *Cragin* is overly broad. A trial court confronted with cross motions for summary judgment *may* be at liberty in most circumstances to determine that the parties have thereby conceded no material issues of fact remain. This court, however, did not intend *Cragin* to establish the proposition that the mere filing of cross motions for summary judgment automatically relieves the trial court of its obligation of determining whether there actually remains any genuine issue of fact for trial.

The instant case provides an excellent example of a situation in which the mere filing of cross motions for summary judgment did not indicate the parties were conceding there were no material issues of fact remaining. Committee and Cheqer were basing their respective motions for summary judgment on two entirely different theories of the case. The record indicates that Committee's motion was premised on its belief that NRS

608.150 mandated it recover the fringe benefits for work performed on Cheqer's project. Cheqer's motion for summary judgment, on the other hand, was based on its contention that Committee's breach of the collective bargaining agreement with Taylor relieved it of all obligations under the agreement, and alternatively, that Committee was estopped from enforcing any obligation under that agreement by its failure to give timely notice of Taylor's failure to pay the benefits.

The parties were bringing their cross motions for summary judgment on two separate legal theories, and relying on two separate sets of facts to support those theories. In such a situation, a trial court is not relieved of its responsibility to examine the record to see if any material issues of fact remain to be tried. If no genuine issues of fact exist, summary judgment is appropriate. But if genuine issues of fact remain, the cause must go forward to trial. *See* Bricklayers, Masons & Plasters International Union of America v. Stuart Plastering Company, Inc., 512 F.2d 1017 (5th Cir. 1975); *Accord.* Heyman v. Commerce and Industry Insurance Co., 524 F.2d 1317 (2nd Cir. 1975); Schlytter v. Baker, 580 F.2d 848 (5th Cir. 1978); Eby v. Reb Realty, Inc., 495 F.2d 646 (9th Cir. 1974).

The preceding discussion is of more than academic interest in the instant case. The record on appeal demonstrates there appear to be material questions of fact concerning Cheqer's alternative ground for its motion for summary judgment, *i.e.,* that Committee was estopped from enforcing any obligation under the collective bargaining agreement by its failure to give timely notice of Taylor's failure to pay the benefits. In an affidavit filed in support of Cheqer's opposition to Committee's motion for summary judgment and Cheqer's counter motion for summary judgment, Cheqer's Vice President stated he was aware of the terms of the collective bargaining agreement between the Painters and Decorator's Union and Taylor, and assumed Committee would immediately prevent union members from working for Taylor should Taylor become delinquent on fringe benefit contributions. Further, Cheqer's Vice President stated that had Cheqer been aware of Taylor's default, it would have required Taylor to make good the payments or would have immediately terminated its contract with the subcontractor. Finally, Cheqer's Vice President maintained Cheqer relied to its detriment on the actions of Committee, inasmuch as Committee failed to advise Cheqer of Taylor's default and failed to require Taylor to fulfill its obligations under the collective bargaining agreement.

## THE EQUITABLE ESTOPPEL DEFENSE

Committee maintains, however, that summary judgment in this case is nonetheless appropriate, because as a matter of law an estoppel defense is not available to Cheqer. We do not feel the record as it now stands supports this contention.

Equitable estoppel has been characterized as comprising four elements: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped. Strong v. Santa Cruz County, 15 Cal.3d 720, 726, 543 P.2d 264 (1975); City of Long Beach v. Mansell, 3 Cal.3d 462, 490, 476 P.2d 423 (1970). Further, this court has noted that silence can raise an estoppel quite as effectively as can words. *See e.g.,* Goldstein v. Hanna, 97 Nev. 559, 562, 635 P.2d 290 (1981).

Whether these elements are present, so that the doctrine of equitable estoppel should be applied, depends upon the particular facts and circumstances of a given case. From the limited record before us, however, we cannot say as a matter of law whether Committee's allowing union members to continue to work for Taylor, when it knew Taylor was delinquent in its fringe benefit contributions, gives rise to an estoppel defense. We note that the affidavit of Cheqer's Vice President alleges Cheqer was ignorant of the true facts, and that Cheqer relied to its detriment on Committee's permitting union members to continue to work for Taylor. Further, it seems clear from the record that Committee, having continual dealings with Taylor, was apprised of the fact that the subcontractor was delinquent on its fringe benefit contributions. However, whether Committee intended its conduct in allowing union members to continue to work for Taylor to be acted upon by Cheqer, or whether Cheqer had the right to believe it was so intended, is not established by the record before us. Material questions of fact therefore remain, and summary judgment was inappropriate.

Accordingly, the summary judgment against Cheqer, Inc., is reversed, and the case is remanded.

MANOUKIAN, SPRINGER, MOWBRAY, and STEFFEN, JJ., concur.