THE 25 CORPORATION, INC., a Kansas Corporation, and NL INDUSTRIES, INC., a Corporation, Appellants, v. EISENMAN CHEMICAL COMPANY, a Colorado Corporation, Respondent.

No. 15982

November 5, 1985                                    709 P.2d 164

*Wilson and Barrows*, Elko, and *Davis, Graham & Stubbs*, Denver, Colorado, for Appellant 25 Corporation.

*Hill, Cassas, de Lipkau and Erwin*, Reno; *Dorsey and Whitney*, New York, New York, for Appellant NL Industries, Inc.

*Hoy and Miller*, Elko; *VanCott, Bagley, Cornwall and McCarthy*, Salt Lake City, Utah, for Respondent Eisenman Chemical Company.

## OPINION

*Per Curiam:*

The 25 Corporation and NL Industries appeal from a summary judgment granted to Eisenman Chemical Company (ECCO), in which ECCO was declared to be a 75 percent owner in certain mineral rights. The judgment was granted on equitable theories of estoppel and reformation. This summary judgment is reversed.

25 Corporation and NL Industries also appeal from the trial court's denial of their motions for summary judgment. The court's denial of these motions is affirmed except for its denial of summary judgment and dismissal of ECCO's fourth cause of action claiming reformation. We hold that ECCO's action for reformation cannot lie, as a matter of law, and order the district court to grant summary judgment dismissing this cause of action.

## I. *FACTS*

The factual background in this case is quite complex, and we set it out in some detail. In the 1940's the Marvel family, through a corporation, W. T. Jenkins Company, owned the 25 Ranch, located in portions of Elko, Lander, and Humboldt counties, Nevada. The 25 Ranch included approximately 125,000 acres of fee land (acquired in a state selection land sale) and approximately 300,000 acres of public domain on which cattle was grazed.

The Marvels employed Melvin Jones as a ranchhand, and the two parties had an agreement that if Jones located any barite while working on the ranch property, Jones would be entitled to an undivided fifty percent interest in whatever he discovered. On April 10, 1955, Jones and the Marvels "located" a claim of barite mineral (Lakes Claim No. 1). On June 24, 1955, a location certificate was recorded for Lakes Claim No. 1, naming Jones and the Marvels as co-locators.

On July 23, 1964, appellant 25 Corporation[1] purchased the 25 Ranch, including all mineral interests, from the Marvels. The deed from the Marvels describes all of the land being conveyed, and after 27 pages of legal descriptions, the following language appears:

> Together with all oil, gas and minerals and rights thereto and all royalties in connection therewith now held, owned or claimed by the W.T. JENKINS COMPANY, or in, on or under the above described lands or any portions thereof . . .; and all interest of the W.T. JENKINS COMPANY in those unpatented lode mining claims located in Elko County, Nevada, known as Lakes #1. . . .

---

[1] No distinction is made between 25 Corporation and its predecessors in interest.

As part of the same transaction 25 Corporation granted back to the Marvels an undivided fifty percent (50%) of any and all mineral, oil, and gas rights in the 25 Ranch. 25 Corporation retained the exclusive right to lease the mineral rights on the property. This mineral deed from the 25 Corporation to the Marvels included a reference to an "unpatented lode mining claim located in Elko County, Nevada known as Lakes No. 1 . . . in which MELVIN R. JONES owns an undivided one-half interest." As a result of these transfers 25 Corporation owned all of the land in the 25 Ranch, and the Marvels owned a 50 percent interest in all of the minerals. As to the distribution of ownership of the Lakes No. 1 claim, 25 Corporation owned 25 percent, the Marvels owned 25 percent, and Jones owned 50 percent of the claim. (See diagram below.)

In 1973, respondent ECCO leased from Jones his 50 percent interest in the Lakes No. 1 claim. On January 9, 1974, ECCO exercised an option to purchase that interest and purchased, by quitclaim deed, all of Jones's "right, title and interest" in Lakes No. 1. On January 11, 1974, ECCO purchased, by quitclaim deed "whatever right, title interest and estate" the Marvels had in Lakes No. 1.[2] From these transfers, ECCO believed it had a 75 percent interest in Lakes No. 1. Here is a diagram of the supposed interests:

(Owners and Percentages)

| 25 Corporation (100%) | | 25 Ranch |
|---|---|---|
| Marvel (50%) | 25 Corp (50%) Right to Lease | Mineral Rights in 25 Ranch |
| Jones (50%) | Marvel (25%) / 25 Corp (25%) | Lakes #1 Claim |

ECCO
(1973 Lease)
(1974 Purchase)

ECCO
(1974 Purchase)

(Claimed Ownership of Lakes #1)

| ECCO (75%) | 25 Corp (25%) |
|---|---|

ECCO
(1975 Lease)

---

[2] 25 Corporation was informed of the acquisition by letter on February 7, 1975.

In 1975, by letter agreement, the 25 Corporation leased its 25 percent interest in Lakes No. 1 to ECCO for one year. ECCO paid 25 Corporation a royalty based on a 25 percent interest in the claim. Although the 1975 letter agreement had a stated one-year term, ECCO continued to make payments to 25 Corporation after the one-year term.

In 1977, ECCO sought a loan from ITT Financial and offered its purported 75 percent interest in the Lakes No. 1 claim as collateral. ITT's Nevada lawyer, Earl Hill, rendered a title opinion to ITT regarding the Lakes No. 1 claim, and ITT sent a copy of this opinion to ECCO. It was at this time that ECCO was informed that the Lakes No. 1 claim had been located on fee land and was not a valid claim.[3] The title opinion contained the following conclusions:

> Lakes #1 Lode Claim is and was void from its inception, and cannot be the legal basis for any mineral rights in the locators or their successors in interest.
>
> . . . .
>
> Legal title to [the Lakes #1 Claim], including all mineral rights is now vested in the 25 Corporation, Inc., subject to a 20 year mineral interest of 50% in favor of [the Marvels].
>
> . . . .
>
> Consequently, Lakes #1 Lode Claim did not create any mineral rights in its locators [Jones and the Marvels] and the locators had no mineral rights to convey.

After receipt of this 1977 Title Opinion, ECCO stopped filing affidavits of annual assessment work which are necessary to retain unpatented mining claims. Apparently, this decision to stop filing proofs of labor was made because of the newly acquired information that the Lakes No. 1 claim was not on federal claim land. ECCO never disclosed to 25 Corporation that the Lakes No. 1 claim was void and that 25 Corporation owned legal title to all mineral rights in the claim area subject only to the Marvels' 50 percent claim. Instead, ECCO continued to pay 25 Corporation a royalty based on a 25 percent interest. 25 Corporation still believed it owned only a 25 percent interest in the Lakes No. 1 claim. However, because the claim was on "fee" land, it was void *ab initio,* and the minerals covered by the "claim" were simply part of all the fee lands on the 25 Ranch, which the 25 Corporation owned in full, subject only to Marvel's 50 percent interest.

In August, 1979, ECCO was acquired by Newpark Resources, Inc. (Newpark), a New York stock exchange company. In the fall

---

[3]Any claims "located" upon state selection lands were void *ab initio. See discussion,* State v. Ellison Ranching Co., 93 Nev. 575, 571 P.2d 394 (1977).

of 1980 Newpark was preparing to make a public offering of its securities and because of that, sought a title opinion from John C. Miller, Esq., as to the Lakes No. 1 claim. On September 18, 1980, Newpark and ECCO received that opinion, which states in part: "[T]he Lakes #1 unpatented mining claim has been void *ab initio* as being located on lands unavailable for location."

The opinion letter also advised ECCO to negotiate a new arrangement with 25 Corporation since the previous lease had terminated in 1976. ECCO contacted 25 Corporation on September 22, 1980, (just days after receiving the above-referenced title opinion) and proposed to enter into a new lease for property including the Lakes No. 1 claim area, continuing to offer 25 Corporation a royalty based on a 25 percent interest and not informing 25 Corporation of the two title opinions.

In October, 1980, soon after ECCO had proposed its lease, appellant NL Industries approached 25 Corporation and proposed to lease lands for barite mining, including the claim area.[4] NL Industries informed 25 Corporation that it had done a title search of the Lakes claim and had discovered that the Lakes claim was void, and that 25 Corporation actually owned all of the mineral interests in the claim area, subject only to the Marvels' 50 percent interest. This was the first time 25 Corporation suspected or had reason to believe the Lakes claim was void.

On October 9, 1980, 25 Corporation executed a lease to NL Industries of lands including the claim area for barite mining. 25 Corporation notified ECCO of the NL Industries mining lease and demanded that ECCO vacate 25 Corporation's property. ECCO filed this action a few days later seeking a declaration of its purported 75 percent interest in the Lakes No. 1 claim.[5]

In 1981, the district court held that the Lakes claim was void *ab initio,* which in effect dismissed ECCO's first and second causes of action. In August, 1981, ECCO moved for immediate occupancy of a portion of the Lakes property beyond the claim, seeking to extract 190,000 tons of barite on the outside of the claim. The motion was granted by district court but was vacated by this court on June 3, 1982. NL Industries, Inc., v. Eisenman Chemical Co., 98 Nev. 253, 645 P.2d 976 (1982).

Following extensive discovery, 25 Corporation and NL Indus-

[4]In 1979, 25 Corporation had entered into a prospecting agreement with NL Industries, which authorized NL Industries to prospect for barite on the entire 25 RANCH, and obligated 25 Corporation to negotiate in good faith to lease deposits that NL Industries found.

[5]The Marvels were originally defendants in the case. In 1982, however, they entered into a purchase agreement with ECCO for sale of certain interests, settled the lawsuit with ECCO, and became additional plaintiffs in the case.

tries filed a motion for summary judgment to dismiss ECCO's "equitable" claims based on estoppel, reformation, and adverse possession. ECCO filed a cross-motion seeking summary judgment in its favor as to these same claims, and also seeking summary judgment dismissing 25 Corporation's counterclaim for quiet title. The district court granted the summary judgment in favor of ECCO, finding ECCO owned an "equitable" 75 percent interest in the Lakes No. 1 claim. This appeal followed.

## II. THE ECCO SUMMARY JUDGMENT

### A. ESTOPPEL

The trial court in granting summary judgment relied on two equitable doctrines, estoppel and reformation. With regard to estoppel the trial court stated:

> Justice and equity require the court to estop 25 Corp. and NL Industries from asserting that the Lakes Claim is or was void as to the barite mined within the vertical boundaries of the claim, except as to 25 Corp.'s 25% interest.

On the estoppel issue the court relied on Noble Gold Mines Co. v. Olsen, 57 Nev. 448, 66 P.2d 1005 (1937). *Noble* is similar to this case in that the defendants had located a mining claim believed to be on federal land but which turned out to be on plaintiff's private land. The evidence in *Noble* showed that the property owner suspected that mining work was being performed by others on his property. He took no action to determine if the work was being done on his property and simply allowed it to continue. The lower court determined that the owner was estopped from asserting title against those making the improvement. The court in its opinion noted:

> In considering each individual case, the courts should keep in mind the purpose of . . . equitable estoppel, which is to prevent a party from asserting his legal rights when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove such rights.

57 Nev. at 462, 66 P.2d at 1010.

It certainly does not appear here, as a matter of law, that either 25 Corporation or NL Industries were guilty of such conduct as to make it contrary to equity and good conscience for them to claim a right in the mining property in question.

In the opinion of the trial court it appears that information was available as early as 1972 which would have shown all parties that the claim was on fee land. It also appears that a survey report was done in 1972, paid for jointly by 25 Corporation, the Marvels and Jones. There is also evidence which would support a

finding that 25 Corporation was never made aware of this survey and that none of the parties was aware of the full legal implications of the survey. The significance of the 1972 report, then, is questionable.

In Cheqer, Inc. v. Painters and Decorators, 98 Nev. 609, 655 P.2d 996 (1982), this court held that equitable estoppel consists of four elements:

> 1. The party to be estopped must be apprised of the true facts;
> 2. He must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended;
> 3. The party asserting the estoppel must be ignorant of the true state of facts;
> 4. [The party asserting estoppel] must have relied to his detriment on the conduct of the party to be estopped.

98 Nev. at 614, 655 P.2d at 998-99 (citations omitted).[6]

It is not too difficult to find factual issues relative to these elements. For example, on the issue of reliance there is evidence in the record that ECCO had knowledge of the invalidity of the claim but still continued to conduct mining operations.

■■■■■■ ■

There are material issues of fact to be determined before the equitable remedy of estoppel can be invoked in this case; therefore, summary judgment in favor of ECCO on this ground must be reversed.

## B. *REFORMATION*

The summary judgment ordered reformation of the 1964 grant deed from the Marvels (W. T. Jenkins Co.) to 25 Corporation relating to the 25 Ranch. The court reformed the deed by adding a paragraph which recognized "an undivided one-half interest to Melvin R. Jones in the mineral rights in a parcel of land located as the Lakes Claim. . . ." The court similarly reformed the 1964 mineral deed from 25 Corporation to the Marvels. This allegedly gave Jones an interest in the mineral rights instead of an interest in the "claim." Without such a reformation, Jones would have no recognizable interest in any part of the 25 Ranch since his only recognizable interest is in a *void* claim.

The core of the court's decision rests on reformation of a supposed agreement between the Marvels and their ranchhand,

---

[6]ECCO argues that *Noble Gold* creates a special standard for equitable estoppel in mining cases. While *Noble Gold* may have set a special standard for knowledge on the part of a landowner, the other essential elements were not abandoned. *Noble Gold*, 57 Nev. at 466-67, 66 P.2d at 1012.

Jones, who is not party to these proceedings. Some kind of unilateral contract might have existed between Marvels and Jones, but it is far from clear and beyond dispute. The substance of the understanding may well have been, as ECCO suggests, that Jones was entitled to one-half of the minerals which he discovered on the Marvels' land, but the existence of such an "agreement" does not appear as an undisputed fact in this record. While ECCO claims the existence of such an agreement, 25 Corporation asserts that Jones was given only an interest in a mining claim and not a general interest in all the minerals on the ranch which he might have discovered. If 25 Corporation is able to establish its position before a fact-finder, then the fact-finder would have to find that Jones has nothing to transfer since his interes is in a *void* claim.

The remedy of reformation is available against a party to a written contract to correct mistakes of fact made in the drafting of the agreement so as to reflect the intentions of the parties. "Reformation is available as an equitable remedy to a party seeking to alter a written instrument which, because of a mutual mistake of fact, fails to conform to the parties' previous understanding or agreement." Helms Constr. v. State ex rel. Dep't Hwys., 97 Nev. 500, 503, 634 P.2d 1224, 1225 (1981).

The first problem with the reformation in this case is that there is a dispute as to the intention of the original parties. When the Marvels were defendants, they denied that Jones was given any ownership interest in mineral rights. In their counterclaim, the Marvels alleged that the location certificate "was ineffectual to create or vest any mineral rights in its purported locators [Jones and Marvel]." Apparently, once the Marvels became plaintiffs, however, ECCO argued that there was an "oral agreement" between Jones and Marvel which gave Jones an interest in mineral rights.

In Holman v. Vierira, 53 Nev. 337, 340, 300 P. 946, 947 (1931), this court ruled that "a court will administer this high equitable remedy only in a clear case." To obtain reformation:

> the *precise terms* of the oral agreement must be made equally clear. If the terms of the previous agreement claimed are *not definitely established* by the evidence, a court of equity will refuse to decree a reformation of the written instrument.

53 Nev. at 340-41, 300 P. at 947 (emphasis added). ECCO has failed to show that the terms of the previous agreement are definitely and clearly established by the evidence. For that reason, it is asserted that the court erred in reforming the deeds.

A further problem exists with regard to the court's reformation in that it appears the court did not succeed in accomplishing its goals. The court discussed the intentions of the Marvels and Jones, yet reformed the instruments between the Marvels and 25 Corporation. The court reformed the deeds by adding a paragraph which recognizes Jones's interest in the barite claim. A document between two parties which recognizes a third party's interest, does not, by itself, *create* that interest in the third party.

ECCO, however, claims that the location certificate, when read in conjunction with the reformed deeds creates an interest in Jones (which was then transferred to ECCO). A location certificate is a unilateral document which is recorded to place notice on the public records that the locators have appropriated federally owned minerals on the public domain to their own use. *American Law of Mining*, § 5.72-5.80 (1980). A location certificate does not create an interest in those minerals—especially when it turns out the claim is invalid.

Thus, the property dispute before the court is not subject to resolution by reformation. Reformation should be used to correct errors in expressing the terms of a contract and should not be used to create new ones. Dobbs, *Remedies* § 11.6 (1973). Consequently, the ECCO summary judgment must be reversed insofar as it relies on this doctrine. For the same reason, the fourth cause of action in the counterclaim of 25 Corporation and NL Industries, resting as it does on a theory of reformation, must be dismissed. The trial court's refusal to grant summary judgment dismissing ECCO's fourth cause of action was error.

III. *SUMMARY JUDGMENT CLAIMS BY 25 CORPORATION AND NL INDUSTRIES*

A. *ESTOPPEL*

25 Corporation and NL Industries assert that even viewing the facts in favor of ECCO, ECCO could never prevail on its estoppel claim, and they therefore claim that summary judgment should be granted in favor of 25 Corporation and NL Industries. As stated above, however, certain facts exist which need to be resolved before judgment can be entered in either parties' favor. For instance, ECCO's ignorance of the true facts is a necessary element of estoppel. *Cheqer,* 98 Nev. at 614, 655 P.2d at 998-99. 25 Corporation argues that ECCO *knew* the Lakes claim was void when it received the 1977 title opinion. The district court, how-

ever, found that this was one attorney's opinion and held that ECCO did not *know* of the invalidity of the claim. The facts are susceptible to different interpretations and should be resolved in trial. Therefore, we hold that 25 Corporation and NL Industries are not entitled to summary judgment and the case is remanded for trial.

## B. *ADVERSE POSSESSION*

25 Corporation and NL Industries assert that the court erred in refusing to grant summary judgment in their favor on the issue of adverse possession.

In order to obtain title by adverse possession, ECCO's possession of the property must be "hostile in its inception; actual, peaceable, open, notorious and uninterrupted for the statutory period." Brooks v. Jensen, 87 Nev. 174, 178, 483 P.2d 650, 653 (1971). Additionally, the statute under which ECCO claims adverse possession requires that ECCO "entered into the possession of premises, under claim of title, exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question. . . ." NRS 11.110.

25 Corporation argues that the undisputed facts in this case fail to satisfy these requirements. The facts, however, are not undisputed. 25 Corporation argues that ECCO's possession was permissive rather than hostile because of the existence of a letter agreement which purported to lease 25 Corporation's 25 percent interest in the claim to ECCO. 25 Corporation asserts that since the letter agreement leased "whatever portion of the Lakes Property the 25 CORPORATION has authority to lease," and since 25 Corporation had authority to lease 100 percent of the property, ECCO had *permissive* rather than hostile possession. There can be no adverse possession if that possession is with the permission of the owner of the property. 3 Am.Jur.2d *Adverse Possession* § 36 (1962); Howard v. Wright, 38 Nev. 25, 143 P. 1184 (1941). There is a question here, however, as to permission. Both ECCO and 25 Corporation believed, at least for some time, that ECCO owned a 75 percent interest in the claim. ECCO would not at that time be using the land "with permission."

25 Corporation also claims that ECCO does not have color of title to the property. NRS 11.110 requires that possession be founded "upon a written instrument as being a conveyance of the premises in question." In this case, ECCO's possession of the property was founded upon the 1974 quitclaim deeds from Jones and the Marvels. 25 Corporation argues that since those deeds granted interests in an invalid mining claim, ECCO has received

no "color of title." This argument is not supported by any authority. These deeds may in fact be relied upon as being a "conveyance" under the statute since ECCO in fact founded possession of the claim on those instruments.

25 Corporation and NL Industries have failed to show that there are no material issues of fact on the issue of adverse possession. More importantly, they have failed to show that they are entitled to judgment as a matter of law. Therefore, the district court did not err in refusing to grant summary judgment on the issue in their favor.

## C. *BONA FIDE PURCHASER*

NL Industries argues that the court erred in finding that NL "is not a purchaser in good faith." The court found that NL's interest in the Lakes No. 1 claim "is the same interest of 25 Corporation." NL asserts, however, that it is a bona fide purchaser, protected against the competing claims of ECCO.

The bona fide doctrine protects a subsequent purchaser's title against competing legal or equitable claims of which the purchaser had no notice at the time of the conveyance. 77 Am.Jur.2d *Vendor and Purchaser* § 633 at 754 (1975); Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246 (1979). NL Industries, however, was aware that the Lakes Claim was void and that ECCO's supposed interests may have been void. NL was also aware of the extensive mining being conducted by ECCO. NL cannot now claim that it had no notice of a possible legal or equitable claim on behalf of ECCO. Therefore, the court did not err in holding that NL was not a bona fide purchaser.

## *CONCLUSION*

Questions of material fact exist on the claim of estoppel, and therefore summary judgment on that claim is reversed. The property dispute before the court is not subject to resolution by reformation, and therefore summary judgment in favor of ECCO on its reformation claims is reversed. Instead, the district court is ordered to grant summary judgment in favor of 25 Corporation and NL Industries and dismiss the claim for reformation. Finally, the district court did not err in refusing to grant summary judgment on the adverse possession claim or in finding that NL Industries was not a bona fide purchaser. Accordingly, the judgment is affirmed in part and reversed in part and remanded to the district court for trial.