MARY ELLEN KOGAN, AS ADMINISTRATRIX OF THE ESTATE OF CLAUDE A. GARDNER, AKA C.A. GARDNER AND CLAUDIUS ALONZO GARDNER, DECEASED, APPELLANT/CROSS-RESPONDENT, v. SILVER KING MINES, INC., A NEVADA CORPORATION; NERCO MINERALS COMPANY, AN OREGON CORPORATION; AND ZANDER MINING, INC., A WASHINGTON CORPORATION, DOING BUSINESS IN NEVADA AS AGNEW ENTERPRISES, RESPONDENTS/CROSS-APPELLANTS.

No. 21164

July 10, 1992                                    833 P.2d 1141

*Matthews & Wines,* Elko, and *Jack M. Merritts,* Englewood, Colorado, for Appellant/Cross-Respondent.

*Nathan M. Jenkins,* Reno, for Silver King Mines, Inc. and Zander Mining, Inc.

*Hill, Cassas & deLipkau,* Reno, for Nerco Minerals Company.

## OPINION

*Per Curiam:*

In 1959, Claude A. Gardner located a group of lode mining claims in the Taylor Mining District, White Pine County, Nevada, known as Mineral Farm 5, Star 3, Silver King 1, Silver King 2, Silver King 3, and Silver King 4 ("the Gardner Claims"). On January 6, 1961, Gardner executed a five-year lease-sale agreement ("1961 Agreement") with Durham Peanut Company covering the Gardner Claims. Gardner died intestate on September 6, 1961, and his eldest daughter, Dorcas Richards, was appointed administratrix of his estate.

In 1964 Durham Peanut assigned its interest in the 1961 Agreement and the Gardner Claims to Silver King Mines, Inc. ("Silver King"). Dorcas Richards, acting on behalf of the Claude Gardner Estate ("the Estate"), executed a document in January, 1964, entitled "Extension of Lease and Sublease" which purportedly extended the 1961 Agreement to July 15, 1969.

On May 29, 1969, Silver King executed an agreement ("1969 Agreement") which stipulated that Dorcas Richards would receive no more lease or royalty payments from Silver King until all rights to the Gardner Claims were properly conveyed and delivered, with the approval of the probate court, to Silver King. No transfer of deeds or probate court approval of the transfer of the rights to Silver King was ever effectuated by the Estate.

In 1973, Silver King drilled exploration holes on the Gardner Claims. From 1973 until 1977, the property was explored fairly

continuously during the summer months. In September of 1979, Silver King, in conjunction with Agnew Enterprises, began construction of a mill partially on the Taylor Millsite. The five-acre Taylor Millsite is contained within the boundaries of the twenty-acre Mineral Farm No. 5. Silver King completed construction of the mill and began mining the surrounding property in 1980. Sometime before 1985, parts of the Gardner Claims were also mined.

From May 29, 1969, until at least 1984, all parties treated the 1969 Agreement as a valid contract. Dan Bushnell, counsel for Silver King, testified that the first instance in which Silver King had any indication that it did not have a right to treat the mining claims as its own was December 12, 1984, when it received a letter from attorney Gary Fairman, representing the Gardner estate.

Dorcas Richards, in her capacity as Administratrix of the Estate of Claude A. Gardner, commenced the instant action against respondents Silver King, Nerco Minerals Company, and Zander Mining, Inc. dba Agnew Enterprises ("Mining Companies") alleging that the Mining Companies were trespassing on mining claims belonging to the Estate. In March of 1986, appellant Mary Ellen Kogan succeeded Dorcas Richards as Administratrix of the Estate.

In answering the Estate's complaint, the Mining Companies alleged that they lawfully occupied the mining claims pursuant to the 1969 purchase agreement or, in the alternative, that they acquired title to the mining claims through adverse possession or equitable estoppel. Before trial, the district court declared the 1969 Agreement invalid.

In addition to the complaint, the Estate, through Kogan, also filed a motion seeking to have the district court declare the Taylor Millsite void and to eject the Mining Companies from that site. The district court denied Kogan's motion and granted the Mining Companies' NRCP 41(b) motion for involuntary dismissal of Kogan's ejectment claim. The lower court also determined that the Taylor Millsite was a valid claim built on non-mineral land.

Following the close of evidence at trial, the jury found, by special verdict, that the Mining Companies had met their burden of establishing adverse possession. The court awarded the Mining Companies their costs and attorney's fees in the amount of $250.00. In addition, the district court held that the Taylor Millsite was a valid mill site and that Mineral Farm No. 5, on which the mill site was situated, was "null and void, for lack of discovery of a deposit of valuable minerals within its boundaries."

*Discussion*

Kogan contends that she presented a prima facie case upon which the jury could grant relief and that the district court erred in granting the Mining Companies' 41(b) motion dismissing Kogan's claim for ejectment. Kogan argues that NRS 517.360 provides that a recorded certificate of location is prima facie evidence of the discovery of minerals in place.[1] The certificate of location for Mineral Farm No. 5 provides that Claude A. Gardner "located a mining claim in Taylor Mining District, County of White Pine, State of Nevada, on a vein or lode known as the Mineral Farm #5." Kogan argues that the admitted certificate of location established a prima facie case that Mineral Farm No. 5 was properly located with a valuable discovery of minerals and was senior to the Taylor Millsite.

The Mining Companies respond that the Mineral Farm No. 5 lode claim and the Taylor Millsite could not both be valid. A mill site can only be located on non-mineral land, and a lode claim is only valid if a discovery of ore deposits is located on the land addressed by the lode claim. The Mining Companies contend that the recorded certificate of location does not establish discovery. Finally, the Mining Companies argue that Kogan failed to establish an actual mineral discovery on the land, by direct evidence, as required by Cole v. Ralph, 252 U.S. 286, 303-07 (1920).

In granting the 41(b) motion filed by the Mining Companies, the trial court found that the irrefuted testimony of record showed that in all five holes drilled on Mineral Farm No. 5, no minerals were found in any more than trace amounts. Because Kogan failed to present evidence sufficient to show a discovery of valuable minerals, Kogan failed to establish a prima facia case showing that Mineral Farm No. 5 constituted a valid mining claim. The district court did not err in granting the Mining Companies' 41(b) motion.

Next, Kogan contends that the district court failed to ade-

---

[1] NRS 517.360 provides as follows:

Records of mining claims, mill sites or tunnel rights made by mining district recorder or county recorder before March 16, 1897, declared valid; evidentiary effect of record.

1. All records of lode or placer mining claims, mill sites or tunnel rights made by any mining district recorder or any county recorder prior to March 16, 1897, are hereby declared to be valid and to have the same force and effect as records made in pursuance of the provisions of NRS 517.010 to 517.280, inclusive.

2. Any such record, or a copy thereof duly verified by a mining district recorder or duly certified by a county recorder, shall be prima facie evidence of the facts therein stated.

quately instruct the jury on the law of adverse possession. We agree and conclude that a new trial is warranted as a result. Kogan's position is that under the peculiar facts of the instant case, instructions 23, 23A, and 24 did not fully instruct the jury on the essential elements of adverse possession.[2] Kogan therefore sought the trial court's approval to add the following instruction, which the court below rejected:

### Adverse Possession—Element of Repudiation

Possession that is initially by the permission of the Gardner Estate or under some right or authority derived from the Estate may not become hostile and adverse until that permission or authority has been clearly rejected or repudiated by the Defendants. The necessary repudiation or rejection of the Plaintiff's title must be made directly to the Plaintiff [citation omitted].

Kogan contends that the Mining Companies' possession was the permissive result of the purchase contract between the Estate and the Mining Companies. "There can be no adverse possession if that possession is with the permission of the owner of the property." 25 Corporation, Inc. v. Eisenman Chemical, 101 Nev. 664, 674, 709 P.2d 164, 171 (1985). Kogan further argues that because the Mining Companies took possession permissively under the contract, it was necessary to instruct the jury that an essential element of the adverse possession claim required a finding, based upon the evidence, that the Mining Companies gave notice to the owner of record that the Mining Companies were rejecting and repudiating the contract, and intended to continue in possession of the property under conditions that were

---

[2]The instructions given by the trial court provide:

23. Continuous, open and notorious adverse possession of a mining claim for two years or more causes title of the claim to vest in the adverse possessor. When one acquires title to an unpatented mining claim through adverse possession it is deemed that he had legal title to the claim from the beginning of his possession.

23A. Possession to be adverse must be inconsistent with the title of the record owner who is out of possession and of such a character as to operate as notice what possession is held under either a claim of right or color of title.

Claim of right and color of title are not synonymous. Claim of right means nothing more than the intention of the adverse claimant to appropriate and use the lands in exclusion of all others. Color of title on the other hand is that which gives semblance or appearance of title but which is not title in fact.

24. To meet their burden of proof to establish their claim of adverse possession, defendants must prove the adverse possession by clear and convincing evidence. Title by adverse possession cannot be made out by inference.

open, hostile and without permission. *See* Walter v. Jones, 154 N.E.2d 250, 252 (Ill. 1958) (Permissive possession does not become hostile possession until the permission or authority has been clearly repudiated); Lovejoy v. School Dist. No. 46 Sedgwick County, 269 P.2d 1067, 1069 (Colo. 1954).

The Mining Companies counter with the proposition that to accomplish a change in status from a permissive user to an adverse user, only constructive notice is required, and that open, continuous and notorious acts to the exclusion of the true owner establish constructive notice. The Mining Companies also contend that the jury instructions clearly and sufficiently set forth the law of adverse possession. Specifically, they argue that Instruction 23, requiring "continuous, open, and notorious" use and 23A requiring the "exclusion of all others," sufficiently address the change in status from a permissive user to an adverse user. At least in the context of the instant case, we cannot agree. It is not apparent from the record that the jury had any basis for finding, or even focusing upon, a repudiation or rejection of the purchase contract by the Mining Companies as a necessary predicate to an award based upon the theory of adverse possession.

"Instructions on every aspect of the case must be given clearly, simply and concisely, in order to avoid misleading the jury or in any way overemphasizing either party's case." Roland v. *State*, 96 Nev. 300, 302, 608 P.2d 500, 501 (1980). Because the district court did not give jury instructions that clearly address permissive use, the trial court erred in not adequately instructing the jury.

We have reviewed and considered the other issues raised on appeal and cross-appeal and conclude that they are without merit.

For the reasons stated above, we affirm the district court's dismissal of Kogan's ejectment claim and reverse the judgment of the district court quieting title in favor of the Mining Companies based on the jury's finding of adverse possession, and we remand this matter for a new trial consistent with this opinion. In addition, because the Mining Companies are no longer the prevailing parties, we reverse the district court's award of attorney fees.

MOWBRAY, C. J., SPRINGER, ROSE and STEFFEN, JJ., and AGOSTI, D. J.,[3] concur.

---

[3]The Honorable Deborah A. Agosti, Judge of the Second Judicial District Court, was designated by the Governor to sit in the place of THE HONORABLE CLIFF YOUNG, Justice. Nev. Const., art. 6, § 4.