Filed 2/2/21  4444 W. Sunset Rd. v. Y Travel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| 4444 W. SUNSET RD., LLC et al., | |
| Plaintiffs and Respondents, | G058803 |
| v. | (Super. Ct. No. 30-2016-00831120) |
| Y TRAVEL, LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, James L. Crandall, Judge.  Affirmed.

Wolfe & Wyman, Michael H. Shen; Marquis Aurbach Coffing and Terry A. Coffing for Defendant and Appellant.

Law Offices of John A. Belcher and John A. Belcher for Plaintiffs and Respondents.

\*          \*          \*

Y Travel, LLC (Y Travel, or lessee) appeals from the trial court's decision, after a bench trial, in favor of 4444 W. Sunset Rd., LLC (Sunset, or lessor) on the latter's claim for back rent on its breach of contract cause of action.[1]  Y Travel contends reversal is required because "there was substantial credible evidence [that] undermines the Superior Court's finding that Y-Travel breached the Lease.  As such, this Court may reverse the Superior Court's Decision as a matter of law."  As we explain, that argument misstates our standard of review, which requires the appellate court to view the evidence in the light most favorable to the trier of fact's decision.  Substantial evidence supports the trial court's ruling here.  We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We briefly set out the relevant background material in the light most favorable to the trial result below.[2]

Y Travel, a Nevada-based tour bus company, agreed in a 2012 lease to rent a portion of Sunset's namesake, 2-acre property in the Las Vegas area.  Then, in the 2013 lease under consideration here, Y Travel agreed to rent the whole property for its bus operations, commencing on February 1, 2013.  The parties mutually agreed the lease would be for five years, with rent beginning at $7,000 a month and then potentially

---

[1]    Sunset's owner, Michael P. Haggerty, also sued Y Travel for breach of a consultant agreement that he claimed Y Travel entered into with him after the parties agreed to terminate the leasehold.  The trial court found against Haggerty on his consulting claim; he does not appeal that determination.  We therefore do not address it further.

[2]    In a prior appeal, this court reversed a different bench officer's pretrial ruling on an issue the court raised sua sponte:  dismissal of Haggerty and Sunset's lawsuit on forum non conveniens grounds (Code Civ. Proc., § 410.30).  (*4444 W. Sunset Rd., LLC v. Y Travel, LLC* (July 26, 2018, G055103) [nonpub. opn.].)  That ruling and our reversal there have no bearing on this appeal.

increasing every two years with a cost of living adjustment. The lease did not last to see a rent increase. The court found the lease was terminated after just 15 months.

Following a one-day bench trial in which the court heard from three witnesses, including Haggerty, the court found that Y Travel "paid $3,000 for the first four months of the lease and nothing thereafter." Y Travel continued to occupy the premises, but it did not pay any rent through the rest of 2013, or in 2014. Sometime near the end of April 2014, Sunset sold the property. The court found that before doing so, Sunset "paid the defendant $10,000 to move out." The $10,000 check Sunset gave Y Travel was dated April 25, 2014. The court noted that "[t]he memo line on the check says, 'Ended lease, Moved out.'"

At trial, the court asked Haggerty during his testimony, "Well, here is my question. If you thought somebody owed you [back rent], why would you pay them ten [thousand dollars]?" Haggerty answered, "Because I didn't have legal fees that I was going to have to pay [to evict Y Travel]," and even if he could gather the fees, he believed the ensuing delay for eviction would only make him "fall further behind" on the value of the property. He was trying to sell the property and had found a buyer. He explained, "The timing—you know, time was of the essence if I was going to have this potential buyer perform."

The court's line of questioning at trial indicated it concluded Sunset was "motivated to sell the property." Additionally, when the court asked Haggerty whether, "to your knowledge, [were] there any defenses that Y-Travel could assert that would prevent you from evicting them," Haggerty rephrased the question as, "Would there be a reason why they could say they didn't have to pay us?" The court responded, "Correct," and Haggerty answered, "No." Haggerty also testified that "[t]here was certainly not a discussion [with Y Travel], 'Oh, you don't owe me for the back rent that you didn't pay me.' That didn't happen."

3

The court in its ruling found that "by selling the leased premises, the plaintiff was releasing defendant from the lease and excusing any *future* rent due as of 4-25-2014." (Italics added.) The court found that neither selling the property, nor paying Y Travel to move out excused Y Travel's obligation to pay back rent. The court relied on a provision in the lease stating that the lessor's reentry and repossession of the property did not "'work[] a forfeiture of the rents to be paid . . . .'"

Curiously, although the court found Y Travel's rent shortfall was $4,000 for each of the first four months of the lease—with lessee paying only $3,000 of the $7,000 due in those months—the court in its ruling appears to have given Y Travel credit for six months of payments. Sunset does not challenge that finding on appeal. Specifically, the court found "[t]he unpaid rent was $4,000 times 6 months and $7,000 times 9 months as of 4-25-2014," totaling $87,000.

Sunset also does not challenge the trial court's liquidated damages finding. The court concluded that although the rent due before the parties terminated the lease going forward "equals $87,000, the plaintiff admits that it is limited by the liquidated damages clause in the lease to $72,305." The court awarded Sunset that amount as its damages on its breach of contract cause of action. Y Travel now appeals.

**DISCUSSION**

As a preliminary matter, we note that Y Travel appeals from the trial court's statement of decision following its minute order in Sunset's favor. "The general rule is that a statement or memorandum of decision is not appealable. [Citations.] The rule's practical justification is that courts typically embody their final rulings not in statements of decision but in orders or judgments." (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 (*Alan*).)

Nevertheless, "[r]eviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and

4

filed and does, in fact, constitute the court's final decision on the merits." (*Alan*, *supra*, 40 Cal.4th at p. 901.) That is the case here. "[A] statement of decision is *not* treated as appealable when a formal order or judgment does follow . . . " (*ibid.*, italics added), but that did not occur here. The court's signed statement of decision resolved all the issues between the parties, including damages in favor of Sunset. We therefore proceed with our analysis, treating the statement of decision as the judgment. (*Ibid.*)

We review the trial court's interpretation of a contract de novo, except when conflicting extrinsic evidence was admitted, in which case the substantial evidence rule applies. (*Roden v. Bergen Brunswig Corp.* (2003) 107 Cal.App.4th 620, 625.) When the extrinsic evidence is in conflict, "and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 956.)

In its opening brief, Y Travel contends that Sunset's decision to terminate the lease in order to sell the property constituted an anticipatory breach by Sunset of the remaining term of the lease. Y Travel argues this preemptive breach gave it a right to "damages for [Sunset] terminating the Lease." In essence, Y Travel suggests the $10,000 Sunset paid it to vacate the premises constituted a net damages calculation. In other words, Y Travel contends that the parties implicitly agreed the $10,000 figure offset in Y Travel's favor *its* damages for giving up the remaining years on the leasehold against Sunset's right, if any, to back rent up to the point Y Travel vacated the property.

The flaw in Y Travel's argument is that no evidence indicates it suffered *any* damages from ending the lease early. Y Travel does not explain how it would be entitled to damages for being deprived of a remaining lease period for which the record strongly suggested it could not pay. Furthermore, Y Travel points to no evidence that, even assuming it was able to pay the current rent, it suffered damages because comparable premises were only available at a higher rent. If other locations were

5

available at a cheaper rent, Y Travel did not suffer damages from what it characterizes as an anticipatory breach which forced it out of the property. The parties must produce their evidence at trial (e.g., Evid. Code, §§ 350-351, 412), and Y Travel presented none bearing on the net damage calculation it now implies in its argument related to the $10,000 payment.

Nor does Y Travel suggest that in having to leave the premises it lost out on business profits from scuttled bus trips or otherwise. It has long been the rule that damages for prospective losses must be established by evidence that "makes reasonably certain their occurrence and extent." (*Grupe v. Glick* (1945) 26 Cal.2d 680, 693.) Y Travel offered no evidence to show it suffered damages of any kind from ending the lease early.

Y Travel cites the Restatement Second of Contracts to argue that, upon an anticipatory breach, the innocent party's "remaining duties or obligations under the contract would have been discharged." (Rest. 2d, Contracts (1981) § 253.) Y Travel invokes this authority to assert it owed no back rent. But when this provision is closely examined, it makes clear that the party's *future* performance is excused by the other's anticipatory breach—it says nothing about absolving the party of its obligation to pay back rent or any other liability for past obligations it did not perform.

In any event, the record does not suggest an anticipatory breach here. Instead, the parties' 2013 lease contract provided that they could amend the lease in a "writing . . . signed by both parties." The $10,000 check on its face meets that requirement stating, "Ended Lease [and Y Travel] Moved out." The check was signed by Haggerty on behalf of Sunset, and by Y Travel's representative to cash it. The check did *not* say that the $10,000 figure was for damages owed to Y Travel or that it released Y Travel from back rent responsibility.

The trial court heard extrinsic evidence related to the parties' intent in terminating the lease, and the court's ruling indicates it credited Haggerty's explanation

6

that there was no mutual intent to relieve Y Travel of its duty to pay rent that was past due. This rebutted what Y Travel characterizes as a "disputable" (presumably meaning "rebuttable") presumption "'[t]hat money paid by one to another *was due to the latter*.'" (Citing Nev. Rev. Stat. § 47.250 (italicized by Y Travel).)

Haggerty's testimony was also consistent with the 2013 lease's express provision that upon nonpayment of rent or other default, "The Lessor may . . . at its option . . . re-enter and take possession of" the property "without such re-entering working a forfeiture of the rents to be paid . . . ." This language furnished objective evidence that *both* parties intended past due rent to be paid. "The parties' expressed objective intent, not their unexpressed subjective intent, governs." (*Securitas Security Services USA, Inc. v. Superior* Court (2015) 234 Cal.App.4th 1109, 1125.) Because the parties did not alter this language when they ended their lease, the trial court reasonably could find it was still controlling.

The fact that the parties terminated the lease with the issuance of a check on a specific date supports the court's conclusion that the lease was terminated from that day forward, rather than that the parties meant to void the lease from its inception. The parties chose not to use language like "ended ab initio" or "void from the beginning." Sunset's sale of the property and termination of the lease supported the court's conclusion Y Travel's obligation to pay rent was "release[ed]" going forward because Y Travel could not continue to use the property. That did not require the court to conclude Y Travel was no longer required to pay for its previous occupancy under the lease. Viewed as a whole, the record supports the trial court's ruling that Y Travel's unpaid rent—up until termination of the lease—was still due.[3]

---

[3] The trial court reduced this amount, $87,000, to what it viewed as the $72,305 in "liquidated damages" that was conceded by Sunset. Sunset in its trial brief sought *both* the $87,000 figure *and* $72,305 in what it characterized as liquidated damages for the remaining term on the 2013 lease after April 2014. The trial court concluded Sunset was not entitled to any rent after April 2014 because the parties ended

Y Travel complains Sunset gave "no written notice of default" for unpaid rent before filing its breach of contract claim; but notice was not required. Thirty days' notice was required when the lessor alleged breach of "any of the *other* covenants" in the lease (¶ 9.01(c), italics added), but not for unpaid rent (¶ 9.01(a)).

This distinction forecloses Y Travel's waiver claim. Y Travel relies on case authority that "[a] lessor's acceptance of rents with knowledge of prior breaches can constitute a waiver of conditions precedent," including payment of rent as a condition for "the exercise of an option to purchase." (*Summa Corp. v. Richardson* (Nev. 1977) 564 P.2d 181, 184.) Here, there was no purchase option at issue.

More importantly, there were no contractual preconditions on the lessor's right to collect rent. Thus, there was no waiver or "relinquishment of a known right" (*Merrill v. DeMott* (Nev. 1997) 951 P.2d 1040, 1046) when Sunset did not provide a notice of default or otherwise pursue rent before filing its lawsuit for breach of contract. No time limit in the lease constrained Sunset's right to collect rent. Y Travel does not suggest Sunset's suit fell outside the statute of limitations. Simply put, because there were no conditions precedent in the lease on Sunset's right to pursue past due rent, Sunset cannot be said to have waived its right to collect rent by failing to fulfill collection prerequisites. There were none. Y Travel's waiver claim therefore fails.

The same is true for estoppel. The elements of estoppel are identical under California and Nevada law, on which Y Travel relies. They include, as Y Travel correctly sets forth, the following: "(1) the party to be estopped must be apprised of the true facts [relevant to the estoppel claim]; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was

the lease, with Sunset's sale of the property effectively "releasing defendant from the lease and excusing any future rent due." The court nevertheless reduced Sunset's damages for back rent to the liquidated damages amount. Because Sunset does not appeal that decision, we express no opinion on whether this was error.

so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; [and] (4) he must have relied to his detriment on the conduct of the party to be estopped." (*Cheqer, Inc. v. Painters & Decorators Joint Comm., Inc.* (Nev. 1982) 655 P.2d 996, 998-999; accord, e.g., *Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.)

Y Travel asserts these elements were met because "Sunset was apprised of the true facts, specifically, that it agreed to terminate the Lease, that Y-Travel would move out, that Y-Travel would rent Haggerty's other property, and that Y-Travel would owe no damages to Sunset." But these "facts" do not establish estoppel. All but the last were known to both sides, not just Sunset, and therefore are not grounds for estoppel. Those facts include that they agreed to end the lease; Y Travel would move out; and Haggerty would rent another property to Y Travel. Y Travel discloses no information about the other rental, except to state that it was "Haggerty's other location, and [Y Travel] stopp[ed] its rent payments on the Property" going forward. That says nothing about any back rent due on the former property that already accrued.

Y Travel's assertion Sunset knew Y Travel "would owe no damages to Sunset" for back rent is argument; it is not a fact. It is a claim that both parties mutually agreed to a "no back rent" term. Y Travel failed to prove its claim. Haggerty denied this was the parties' agreement, testifying to the contrary: "There was certainly not a discussion, 'Oh, you don't owe me for the back rent that you didn't pay me.' That didn't happen."

The trial court's ruling reflects that it believed Haggerty. That is fatal to Y Travel's estoppel argument because, "with respect to equitable issues, the *trial court* is the trier of fact." (*Hopkins v. Kedzierski, supra*, 225 Cal.App.4th at p. 745; accord, *In re Harrison Living Trust* (Nev. 2005) 112 P.3d 1058, 1061.) Y Travel presents nothing to indicate the trial court was required to disbelieve Haggerty as a matter of law. The parties' agreement that the lease had ended was consistent with awarding Sunset back

9

rent for amounts due up until the lease terminated, and none thereafter.  We therefore affirm the trial court's award.

## DISPOSITION

The trial court's decision awarding Sunset $72,305 on its breach of contract claim is affirmed.  Sunset is entitled to its costs on appeal.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.