ARTHUR R. FORCE, APPELLANT, v. WILLIAM PEC-COLE, L. L. OUSLEY, FRANK B. DITTMAN AND MARGARET A. DITTMAN, HUSBAND AND WIFE, RESPONDENTS.

No. 4376

March 22, 1961                    360 P.2d 362

*Morton Galane,* of Las Vegas, for Appellant.

*George E. Franklin, Jr.,* of Las Vegas, and *Guild, Busey and Guild,* of Reno, for Respondents.

## OPINION

By the Court, McNamee, J.:

This action was brought by appellant to obtain a judgment awarding him a certain interest in land described in his second amended complaint.

The allegations of the second amended complaint material to this appeal are as follows:

It is alleged in paragraph IV thereof that the defendants "promised and agreed that in consideration of the performance of services by the said James J. Shepard, Jr., for and on behalf of said defendants and the said Robert W. Shrake, aka R. W. Shrake, in connection with

the processing of the aforesaid application and transfer of lands purchased by the defendants under the provisions of said Section 8 of the United States Statute known as the Taylor Grazing Act [43 U.S.C.A. sec. 315 et seq.] and other services in connection therewith in the District of Columbia, said defendants would transfer, and the said James J. Shepard, Jr., [aka J. J. Shepard] appellant's assignor, would own 15% of the joint venture therein contemplated; that pursuant to said agreement, the said James J. Shepard, Jr., performed said services as agreed upon."

The said complaint in a separate paragraph also refers to a written agreement dated January 5, 1950 creating the joint venture contemplated above which was executed by the respondents wherein $15,000 was to be paid by respondents Dittman to Clark Guild, Jr., in trust partly for his services in connection with the acquisition of said lands from Southern Pacific Land Co. and said written agreement specified that J. J. Shepard was to own 15 percent thereof.

A motion for a more definite statement was made by respondents to require plaintiff to furnish a statement of the following: (1) the date of the agreement alleged in said paragraph IV; (2) whether the agreement was written or oral; (3) if oral, with which defendants was said oral agreement entered into; and (4) what services were to be performed by appellant's assignor and what services were actually performed. Pursuant to said motion, appellant furnished a statement that the agreement mentioned in paragraph IV was oral; that it was made prior to the filing of the application for land transfer under Section 8 of the statute commonly known as the Taylor Grazing Act; that the said oral agreement was the culmination of numerous conversations and conferences and was entered into in the late summer of 1949, and after the 5th day of August 1949; that said oral agreement was made by James J. Shepard, Jr., with the respondents William Peccole, L. L. Ousley, and Robert W. Shrake, with the ratification and approval of the respondents Dittman; and that the services to be performed by Shepard, were "the processing with the

Department of Interior, the defendants' application for transfer of land under said Taylor Grazing Act, and to serve as Washington, D. C. counsel for said defendants; that pursuant to said agreement the said James J. Shepard, Jr., plaintiff's assignor, held conferences with agents of the Department of Interior; entered into correspondence with the defendants' Nevada counsel, Clark Guild, Esquire, advised, counselled and coordinated the work involved in said application between the defendants and their Nevada counsel and agents of the Department of Interior; that said James J. Shepard, Jr., plaintiff's assignor, performed all duties requested and required of him under said agreement."

The allegations contained in paragraph IV of the second amended complaint were denied in respondents' answer thereto; wherein defendants affirmatively alleged that prior to the execution of the said joint venture agreement of January 5, 1950, "upon the representation and inducement of defendant R. W. Shrake that J. J. Shepard was an attorney at law practicing in the District of Columbia who could be of material assistance in the securing of a Federal land exchange, the Defendants agreed to set apart fifteen per cent of said joint venture to be conveyed to J. J. Shepard, in the event he were employed by said Defendants and did ultimately secure the consummation of said Federal Land Exchange." * * * That "Defendants L. L. Ousley and William Peccole, with the express authorization of all the defendants, conferred with the said J. J. Shepard with respect to his employment by the defendants, and determined after one meeting not to continue the employment of J. J. Shepard." * * * That "the said J. J. Shepard was paid in full by the Defendants for his services for several conferences with the Defendants and one luncheon meeting with a Federal Land Official, and accepted said money, nor was ever returned or tendered back said money. * * * At no time did Defendants agree with the said J. J. Shepard to convey to him any interest in said joint venture."

After a trial without a jury, the court rendered a written decision dated July 21, 1960, wherein it recited that

an order had been made that briefs should be filed, the first brief to be filed by plaintiff, and that although the trial had been concluded on November 20, 1959, and although defendants had requested plaintiff's counsel to file his brief, no briefs had been filed, and the court decided the case without the benefit of briefs. The court found in said decision that "there was a contract entered into between the parties and therein the name of James J. Shepard was inserted, showing that he was to receive fifteen (15) per cent of the product received upon his preparing, processing, and completing of the work of obtaining title thereto from the government.

"There is evidence to show that many conferences were held between the various parties to the contract and in particular with one Robert W. Shrake whereby he said Shepard was employed to make application, process and to carry on to completion the procuring of the lands mentioned in the application to the benefit of the Defendants, and there is much evidence to show that the said Shepard did do a considerable amount of work through correspondence and that there was filed with the proper Governmental agency an application for said land.

"It is further shown that said application was returned and to whom was not definitely proven but the said Shepard received the notice that the same was returned and rejected because not in proper form and for other reasons set out in the notice of rejection.

"The proof further shows that the said Shepard did nothing more thereafter; that all he did was enter into certain conversations and correspondence with certain of the Defendants, particularly a Mr. Peccole, and was instrumental in filing the original application, which original application was rejected by the Governmental Agency.

"Thereafter the matter was continued to be processed through Counsel in the State of Nevada, and the original application, although rejected, was used, whereupon Counsel in Nevada filed an amended application with the Department in the State of Nevada; the amended application being so filed, being an amended application to the

original application in order to obtain certain priority rights by reason of said first application.

"Thereafter the entire work was done by Nevada Counsel and nothing at all was done by Mr. Shepard.

"The Court feels that Mr. Shepard would be entitled to the reasonable value of his services rendered but cannot find that he is entitled to the amount set forth in the contract, fifteen (15)' per cent, or to the amount prayed for in the complaint or for damages as prayed for.

"It should be noticed also that the contract was never signed by Mr. Shepard and there is no evidence definitely fixing the compensation between the Defendants and Mr. Shepard as being fifteen (15) per cent of the benefits to be received.

"The evidence does show that Mr. Shepard did nothing beyond what has been heretofore said and that the processing and filing of the amended application and carrying the matter through to final determination was all done by the Nevada Counsel.

"Inasmuch as no evidence was submitted as to the value of the services rendered by Mr. Shepard the Court is unable to fix any value of the same;

"Therefore, the Court cannot find that the said Plaintiff in this case, Assignee of the said Shepard would be entitled to relief prayed for in the complaint and, therefore, the Court finds in favor of the Defendant and against the Plaintiff."

No formal findings of fact or conclusions of law, other than what appear in said written decision, were made by the trial court, and its judgment that the appellant take nothing by reason of his said complaint resulted from said decision.

Appeal is from said judgment.

Appellant cites six errors in his opening brief. He filed no reply brief.

The first error assigned is that the court erred "in failing to find a contract among Shepard and the Respondents." This assertion is without merit because it appears from the quoted portion of the trial court's decision that a contract of employment was entered into between Shepard and the respondents.

The second assigned error is that the court erred "in

failing to find that Shepard did not substantially perform his part of the contract." Whether Shepard substantially performed his part of the contract was a factual determination. Shepard testified that the agreement to share with him the lands to be acquired resulted from discussions had in the middle of 1949 between him on the one hand and Shrake, Peccole and Ousley on the other. Ousley testified that all of the respondents had employed Shepard and agreed to pay him 15 percent of the said joint venture as compensation for his services in processing the application in Washington for an exchange of lands under the Taylor Grazing Act.

Peccole testified that a 15 percent interest was to be given to Shepard "if he would deliver patents to us on this land that we were applying for. * * * Actually, the understanding at the beginning was this was going to be handled in Washington and we had to do nothing except just sit back and provide the information as to what lands we wanted to select and we were to get options or to buy lands to be offered; in other words we had to offer our land or privately owned land for Federal land or selected land." It further appears from Peccole's testimony that the reason Shepard was not given 15 percent or any interest in the joint venture was "because he hadn't produced or delivered as our understanding was; he had not secured patents; in fact he quit working and he didn't do anything"; that after Shepard indicated that he no longer could render service to the respondents the agreement between the respondents to give Shepard 15 percent was rescinded; that the first application for the exchange of lands was actually filed by Nevada Counsel and filed not in Washington, D. C., but in Reno which was the proper place for filing; that the amended application with which Shepard had nothing to do was likewise filed in Reno and finally approved.

True it is that there was a conflict in the evidence not only as to what Shepard was to do to be entitled to the 15 percent interest but also as to whether he substantially performed his part of the employment agreement. The trial court decided these issues in favor of

respondents and there was competent evidence to sustain the court's determination of these contested matters.

The third assignment of error also involves a factual question. Appellant here asserts that the trial court erred "in construing the contract among Shepard and respondents to mean that Shepard was bound to actually complete the procuring of lands in Nevada inasmuch as there was no such express or implied term in the contract." If appellant is referring to the written contract of January 5, 1950, to which he was not a party, the assignment would need no further consideration because this action according to the pleadings, as amplified by the more definite statement is based on a prior oral agreement to which Shepard was a party. Both appellant and Shepard testified that the claim sued upon was based on an oral contract entered into some six months before the date of said written contract. The evidence in the record sustains the contention of respondents that Shepard in consideration for an interest in the joint venture was to perform legal services to procure the desired patents and that there was a failure of consideration. In fact it developed during the trial from Shepard's own admission that he was not admitted to practice law in the District of Columbia.

In his fourth assignment of error appellant contends that the trial court should have found that the agreement of January 5, 1950 constituted appellant a third party beneficiary. Without considering the fact that said written agreement was later rescinded by the signatories thereto or the legal effect a rescission would have on the rights of a third party beneficiary, we must hold that this contention is without merit because as shown heretofore the pleadings were based on the oral contract entered during the year 1949 and the suit was tried on that theory. Evidence was received on behalf of appellant and respondents pertaining to said oral contract and the terms thereof. The written agreement of January 5, 1950 was relevant only with respect to the compensation Shepard would receive under the oral

agreement in the event the oral agreement was performed by Shepard in accordance with the terms of said oral agreement. In asserting rights as a third party beneficiary under the written agreement of January 5, 1950 appellant on this appeal is adopting a theory inconsistent with that taken in the trial court. The settled rule in this state is that a party on appeal cannot assume an attitude or adopt a theory inconsistent with or different from that taken at the hearing below. Clark County v. State, 65 Nev. 490, 199 P.2d 137. The case of Ward v. Taggart, 51 Cal.2d 736, 336 P.2d 534, cited by appellant in his oral argument is not applicable to the situation here presented. In that case the facts pleaded and proved were sufficient to uphold a recovery under the theory adopted in the appellate court. Such is not the situation in the case now before us.

The fifth assignment of error is that the trial court erred in failing to find that the respondents are estopped from denying the existence of a contract between themselves and Shepard "because the latter reasonably relied on their misrepresentations and substantially performed his part of their agreement." This contention assumes that respondents made misrepresentations to Shepard and, further, it assumes that Shepard substantially performed his part of the agreement. These matters were determined by the trial court adversely to appellant and substantial evidence justifies such determination.

Lastly, appellant contends that the court erred in finding that there was no evidence definitely fixing compensation between the respondents and Shepard at 15 percent of the benefits to be received pursuant to the agreement dated January 5, 1950. Here again, appellant fails to recognize that the suit was based on the prior oral contract under which compensation was to be paid only in the event of substantial compliance by appellant with the terms thereof. It is clear from the record that all the parties, including Shepard, assumed that Shepard was to receive the 15 percent interest in the joint venture only for specific services which he (and Shrake also on his behalf) represented he could or would perform. Whether he was entitled to any compensation

for partial performance is not a matter for consideration on this appeal. No evidence was presented in the court below relating to the value of any services rendered by Shepard to the respondents.

That the court's decision is inconsistent with certain admitted and proven facts perhaps can be attributed to the lack of final oral argument in the court below and the failure of counsel to file therein the ordered briefs. As a result it is not likely that the evidence would be accurately recalled with the interim of eight months between trial and decision that resulted.

Affirmed.

BADT, C. J., and PIKE, J., concur.