TORE, LTD., A NEVADA CORPORATION; RALPH CASAZZA AND ALICE JACOBSON, APPELLANTS, v. M.L. ROTHS-CHILD MANAGEMENT CORPORATION, A FOREIGN CORPORATION; RETAIL REAL ESTATE CONCEPTS, LTD., A FOREIGN CORPORATION; RETAIL SERVICES, INC., A FOREIGN CORPORATION; RETAIL REAL ESTATE STRATEGIES, INC., A FOREIGN CORPORATION; RETAIL EQUITIES, INC., A FOREIGN CORPORATION, AND SECURITY BANK OF NEVADA, A NEVADA BANKING CORPORATION, RESPONDENTS, v. M.L. ROTHS-CHILD MANAGEMENT CORPORATION, A FOREIGN CORPORATION, CROSS-APPELLANT, v. TORE, LTD., A NEVADA CORPORATION; RALPH CASAZZA AND ALICE JACOBSON, AS STATUTORY TRUSTEES OF WINSTON'S OF NEVADA, INC., A DISSOLVED CORPORATION; RALPH CASAZZA AND ALICE JACOBSON; AND RALPH CASAZZA AND ALICE JACOBSON AS THE PERSONAL REPRESENTATIVES OF RENA K. CASAZZA, DECEASED, CROSS-RESPONDENTS.

No. 19147

June 8, 1990                                        793 P.2d 1316

[Rehearing denied August 21, 1990]

*Hamilton & Lynch,* Reno, for Appellants and Cross-Respondents.

*Lionel Sawyer & Collins* and *Richard W. Horton,* Reno, for Respondents and Cross-Appellant.

*Allen Rabkin,* Las Vegas, for Security Bank of Nevada.

## OPINION

By the Court, STEFFEN, J.:

Appellant/cross-respondent Tore, Ltd. (Tore) and respondent/cross-appellant M.L. Rothschild Management Corporation (Rothschild), both appeal from a district court judgment imposing liability on each in a commercial contract dispute. Having determined that there is no clear basis for reversal, we affirm.

## The Facts

Tore first became involved in a series of commercial transactions culminating in the judgment below by entering into a contract with Retail Real Estate Strategies (Strategies) and Rothschild on January 19, 1984. The initial agreement involved Tore in the management of a retail store operation by and through its subsidiary corporation, Winston's of Nevada, Inc. (Winston's). Tore was the owner of the shopping center in which the aforesaid retail store was to operate. Winston's was organized as a men's wear store, and was funded in part by a $100,000 letter of credit issued by Security Bank of Nevada and guaranteed by Tore and Winston's in favor of Rothschild, the supplier of the clothing. The contract provided for Winston's and Strategies to share the management responsibilities of the new venture.

After a period of operation, Tore determined that it wanted to relieve itself of its responsibilities in the retail store and confine its role to that of a landlord. In order to accomplish this objective, Tore assigned its rights and obligations under the original contract to Retail Real Estate Concepts (Concepts), a subsidiary of Strategies. As part of the transaction, Tore agreed to provide a new letter of credit in the amount of $75,000 to replace the original letter in the higher sum of $100,000, plus an additional letter of credit in the amount of $65,000 to facilitate a contract between Concepts and Rothschild for women's wear. The $75,000 letter was given to continue the supply of men's wear by Rothschild. Tore and Concepts executed this novation to the original contract on April 1, 1985.

On April 11, 1985, Concepts and Rothschild entered into a contract requiring the latter to supply women's wear to the store. Tore, who was not a party to this agreement, received neither a copy of the contract nor the specifics of its provisions.

In July 1985 Rothschild's attorney informed Tore that Rothschild was unwilling to agree to an assignment of the January 1984 contract unless Tore would again provide a $100,000 letter of credit in lieu of the $75,000 letter. At the same time, Rothschild returned the $75,000 letter, which thereafter was cancelled. Tore promptly communicated its rejection of the Rothschild position, contending that it was too late to unilaterally modify the completed agreement. Rothschild and Concepts nevertheless continued to do business under the April 1, 1985 contract until December 1985, when Rothschild declared the agreement to be in default.

This litigation commenced when Rothschild attempted to draw upon the original $100,000 letter of credit issued in support of the original men's wear contract and was frustrated when Tore

sought and obtained a temporary restraining order. Later, while the action filed by Tore was pending, Rothschild successfully drew against the $65,000 letter of credit which had been issued in connection with the contract that was the intended replacement for the original agreement of January, 1984. Tore thereafter amended its pleadings to include all claims between the parties, including those arising from the presentment and payment, over Tore's objection, of the $65,000 letter of credit.

In effect, the trial below was bifurcated. At the conclusion of the first trial, and a successful motion by Rothschild to amend the decision, the trial court recognized the continued validity of the original $100,000 letter of credit, but only to the extent of the $75,000 Tore agreed to provide in support of the April 1, 1985 contract. Tore objected to the proposed findings of fact, conclusions of law and judgment on grounds that unresolved issues remained. Thereafter, trial was held concerning the $65,000 letter of credit.

After all issues were tried, the district court entered judgment against Tore in accordance with its prior ruling that recognized the continued validity of the $100,000 letter of credit up to a limit of $75,000. The court also concluded that Rothschild had wrongfully drawn against the $65,000 letter of credit and accordingly entered judgment against Rothschild in that amount. Both parties appealed from the judgment.

## Discussion

During trial, Rothschild's case was premised exclusively upon the validity of two points. First, that the 1984 contract remained unchanged and continually in effect, i.e., that there was no novation. Second, that the contract for women's wear was a separate agreement from the men's wear contract of 1984. These two contentions were consistent, because if the men's wear contract had never been assigned, then the women's wear contract had to be a new and separate transaction.

On the other hand, Tore's characterization of the transaction in the lower court differs significantly on two main points. First, Tore asserts that both the men's wear and women's wear contracts were a single integrated contract, and that both letters of credit were issued to satisfy this intended substitution of parties and liabilities for the purchase of merchandise. Second, Tore charges that Rothschild repudiated the novation when it sent back the $75,000 letter of credit and unilaterally demanded a $100,000 letter of credit on July 15, 1985.

A careful review of the record reveals that the trial court's findings and judgment are consistent with the evidence presented

by both parties below. Therefore, the trial court's determination is not clearly erroneous and will not be reversed on appeal.

The trial court, after a review of the evidence presented by both sides, found that Rothschild, because of its conduct in accepting and holding the letters of credit, was estopped to deny that a novation had occurred. This finding was reached in spite of the evidence Rothschild presented at trial that there was no novation and that the original men's wear contract had never been assigned. Although the trial court concluded that the parties did not reach a new agreement, it nevertheless invoked the principles of equitable estoppel (arising from Rothschild's conduct in misleading plaintiff into believing an agreement had been reached and was being performed) in finding an implied novation. The trial court concluded that an implied novation had arisen because of Tore's reasonable and detrimental reliance on Rothschild's actions. Rothschild had a duty to speak and because of its silence, Tore had detrimentally changed its position from that of a participant in the management of Winston's store to that of a lessor. Therefore, a novation arose by application of the doctrine of equitable estoppel. *See* Mahban v. MGM Grand Hotels, 100 Nev. 593, 596, 691 P.2d 421, 423 (1984); Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982); and Goldstein v. Hanna, 97 Nev. 559, 562-63, 635 P.2d 290, 292 (1981).

The trial court also found that Tore had put up the $75,000 letter of credit as consideration for this novation. Additionally, the trial court held that if Tore prevailed on its novation claim through equitable principles, equity also required that Tore be liable for the consideration it pledged for its release from the January 19, 1984 men's wear contract.

As far as the $65,000 letter of credit is concerned, it is clear that Rothschild never recognized the aforesaid instrument as part of any agreement to which it considered itself bound. Indeed, in its answer to Tore's complaint, Rothschild took the position that because Tore remained obligated under the terms of the January 1984 contract, the performance of which Tore had guaranteed, Rothschild was entitled to draw against the $65,000 letter of credit simply because of Tore's liability under the guaranty.

On appeal, Rothschild now seeks to switch positions and take advantage of what it characterizes as the lower court's more insightful and accurate characterization of the agreement of novation which Rothschild was subject to on the basis of an estoppel.

Rothschild's position will not withstand scrutiny for two reasons. First, it is settled in Nevada that "a party on appeal cannot assume an attitude or adopt a theory inconsistent with or different from that taken at the hearing below." Force v. Peccole, 77 Nev. 143, 151, 360 P.2d 362, 366 (1961). Rothschild denied the existence of a novation in the district court and maintained that its resort to the $65,000 letter of credit was justified because of Tore's guaranty of the January 1984 agreement.

Second, the evidence reflects that the $75,000 letter of credit was supplied by Tore as consideration for its release from further responsibility under the January 1984 contract and guaranty. The $65,000 instrument of credit was supplied by Tore in contemplation of a new arrangement between Rothschild and Concepts that would provide a source of women's wear for the store. As mentioned previously, Rothschild expressly denied this proposition at trial. Moreover, during oral argument, while attempting to take advantage of the district court's ruling, counsel for Rothschild took the contradictory position that even under the novation found by the court, the women's wear aspect of the novated agreement was entirely separate and was "none of Tore's business." In other words, according to Rothschild's position on appeal, the women's wear aspect of the novation agreement merely amounted to Tore providing a $65,000 letter of credit to be used by Rothschild as it saw fit, without conditions or safeguards protecting Tore to any degree.

Understandably, the district court judge concluded that the women's wear aspect of the novation was conditional in that Rothschild had to acknowledge both its acceptance of a contract for women's wear and the terms under which the letter of credit supplied by Tore would be utilized. Instead, Rothschild steadfastly maintained that Tore remained bound by the January 1984 contract and guaranty, and that Rothschild had no obligation of any sort to Tore regarding any separate agreement it might undertake with respect to women's wear.

The district court correctly determined that the novation agreement encompassed two aspects. The first was self-executing in that the new $75,000 letter of credit supplied by Tore accomplished the latter's release from the January 1984 men's wear contract and guaranty. The second aspect of the agreement required a new and separate contract for women's wear between Rothschild and Concepts concerning which Tore had a substantial interest by virtue of the $65,000 letter. Rothschild was not free to ignore Tore and in effect foist upon Tore an unreasonable, unrestricted liability under the credit instrument. In fact, as noted previously, Rothschild simply retained the $65,000 letter as an

additional source of security under the January 1984 agreement because it refused to recognize Tore's rights under the novation contract.

The record supports the finding below that Rothschild never notified Tore that it had entered into a women's wear contract with Concepts, that it never provided a copy of such a contract to Tore, and that it never acknowledged to Tore that it was holding the $65,000 letter as security for such a contract. In short, the evidence reflects that Rothschild never recognized a contractual arrangement with Tore other than that of the January 1984 agreement pertaining to men's wear. The district court therefore quite properly concluded that there was never a meeting of the minds between Tore and Rothschild concerning the women's wear agreement, the consequence of which is that Rothschild had no legal entitlement to the $65,000 letter of credit. We are unwilling to permit Rothschild to alter its position on appeal to the detriment of Tore.

There is substantial evidence in the record to support the trial court's findings and judgment. The trial court's findings and judgment are not clearly erroneous. The rule is "that . . . the trial court's findings will not be set aside unless clearly or manifestly against the weight of the evidence, or without any reasonable support therein." Finnell v. Bromberg, 79 Nev. 211, 226, 381 P.2d 221, 228 (1963). *See also* Holland Livestock v. B&C Enterprises, 92 Nev. 473, 474, 553 P.2d 950, 950 (1976).

For the reasons set forth above, we hereby affirm the judgment in its entirety.[1]

YOUNG, C. J., and MOWBRAY, J., concur.

ROSE, J., with whom SPRINGER, J., concurs, concurring in part and dissenting in part:

I agree with the majority opinion's conclusion that there is sufficient evidence to support the district court's finding that Rothschild is estopped by his conduct to deny that the letter of credit from Tore was modified from $100,000 to $75,000. However, I find no reasonable interpretation of the evidence to support the lower court's additional finding that the $65,000 letter of credit was ineffective because Rothschild did not assign the men's wear contract and release Tore from it. I would enforce both letters of credit.

By finding detrimental reliance, estoppel and an implied nov-

---

[1]Notwithstanding the numerous parties captioned in this opinion, the specific issues discussed herein are dispositive of the contentions raised on appeal by M.L. Rothschild Management Corporation and all parties captioned as appellants and cross-respondents.

ation, the district court rewrote the contracts between the parties. In its lease agreement with Concepts, Tore agreed to issue two letters of credit, one for $75,000 and the other for $65,000. When Rothschild insisted on the $100,000 letter of credit rather than accept the $75,000 one as its replacement, Tore wrote back that the lease agreement was already concluded and the non-party Rothschild must abide by its terms. Tore never attempted to cancel or rescind the $65,000 letter of credit. Tore should be held to the agreement it made and that it insisted was effective.

The district court expressly found that Tore was released from any prior contractual obligations and Rothschild was estopped from pursuing Tore and its principals. Even assuming Rothschild was required to assign its men's wear contract and personally release Tore, its failure to do so is of no consequence because the court has expressly found that Tore and Winston were released by Rothschild's actions.

There is substantial evidence to support the enforcement of the $75,000 letter of credit. But once this decision was made, I can see no reasonable or logical interpretation of the facts in this record to support the finding that the $65,000 letter of credit is unenforceable. For that reason only, I dissent from the majority opinion.