LINDLEY & CO. *v.* PIGGLY WIGGLY NEVADA CO.
ET AL. (NEVADA MACHINERY & ELECTRIC CO.,
INTERVENER).

No. 3016

January 5, 1935.                    39 P.(2d) 903.

See, also, 54 Nev. 454, 22 P.(2d) 355; 30 P.(2d) 223.

*Ayres, Gardiner & Pike* and *H. R. Cooke,* for Appellant:

*G. Gunzendorfer* and *Talmage L. Smith,* for Respond-
ents:

460

## OPINION

By the Court, SANDERS, C. J.:

The Piggly Wiggly Nevada Company, a corporation, owned and operated a grocery store in Reno, Nevada, and a grocery store in Ely, Nevada. The Nevada Machinery & Electric Company, a corporation, installed in each of said stores an electric refrigerating plant on conditional sale contracts. On May 29, 1931, Lindley & Company, a corporation, filed a complaint in the court below against the Piggly Wiggly Nevada Company, setting up alleged grounds for a receiver and asking for the appointment of a trustee. On the same day, the defendant company having appeared and consented to the appointment of a trustee, the court made an order

appointing Charles Hansen as trustee, with usual powers granted receivers in similar cases. On February 29, 1932, the Nevada Machinery & Electric Company made written demand upon the trustee either for the payment of the delinquent price for each of said electric refrigerating plants, or that the property be returned to the seller. Failing in this, the seller, on March 12, 1932, filed its petition in the receivership cause, setting up, among other things, that under and by virtue of a written conditional sale contract dated June 11, 1929, the petitioner sold and installed in the Reno store of the Piggly Wiggly Nevada Company an electric refrigerating plant for the agreed price of $1,650, payable $400 upon the signing of said contract and the balance payable thirty days after date of the installation, which was completed on or about the first day of August, 1929; that said sum of $400 was paid on or about the signing of said contract, but that no further payment was made, except as follows: $700 November 27, 1929; $17.60 January 31, 1931; and $148.42 February 28, 1931, leaving a balance due and owing upon the Reno contract of $503.46, principal and interest. The petition alleged that on November 25, 1929, the petitioner entered into a further and separate written conditional sale contract to install in the Ely store a complete electric refrigerating plant for $2,461.13, payable in cash upon the arrival of material, etc., at Reno or Ely. The petition shows the various items and dates of payments on the Ely plant beginning with December 7, 1930, and ending on August 29, 1931, and, after allowing and crediting the payments, there was owing and unpaid the sum of $1,941.27. The petitioner alleged that in each of said contracts title was reserved in the seller until the full payment of the purchase price; that the vendee was in default, and petitioner is the owner of, and entitled to possession of, the property. The petitioner prayed judgment against the trustee for recovery of possession of the property or for the sum of $4,000, the value of the property, and, in case delivery

could not be had, the same to be ordered paid as a preferred claim. The trustee, for answer to the petition, disclaimed having any knowledge of or information of the facts alleged in the petition, and prayed that the court find and adjudge in accordance with the facts of the case.

After a full hearing, the court rendered its decision, supplemented by findings of fact and conclusions of law, upon which it was adjudged and decreed that the petitioner was not entitled to judgment for the recovery of possession of the two refrigerating plants, nor entitled to recover the value in cash in case delivery could not be had; neither was petitioner entitled to be paid any amount forthwith as a preferred claimant, but was entitled to file a claim as a general credit, and to be paid pro rata with all creditors of the Piggly Wiggly Nevada Company, a corporation. Petitioner appeals from the judgment and from an order denying a new trial.

The court's findings establish each and all of the allegations contained in the petition, except the averment "default has been made in both of the above described contracts and petitioner is the owner and entitled to the possession of all of the above described property." The findings in this regard are, in substance, that, by the acceptance of the payments in the amounts indicated after default, the petitioner waived and lost any right that it might theretofore have had to reclaim the property embraced in the Reno contract; the title thereto by the course of dealing between the parties having absolutely vested in the Piggly Wiggly Nevada Company. As to the Ely contract, the finding was, in effect, that the balance due was not conditioned upon any right of petitioner to retain ownership or to retain the property; that, if there was any condition attached to the sale or installation of said refrigerating plant, the same was waived and abandoned by petitioner, and the petitioner had no right to reclaim the property. It was further found that the petitioner took no steps to repossess the property until on or about

February 29, 1932, when petitioner caused to be served upon the trustee the written demand hereinabove mentioned.

1. The question most discussed on appeal is the court's findings relative to the subject of waiver. It is held that no general rule in re to a waiver by a conditional seller can be laid down other than that a waiver may be inferred wherever the conduct of the conditional vendor is inconsistent with the idea that he still expects to enforce a return of the goods if the conditions are not performed. Whether such is the case or not is a question of fact. Mechem on Sales (vol. 1), sec. 624. In Jones on Chattel Mortgages and Conditional Sales (Bowers Ed.), sec. 1302, it is stated, in substance, that a seller may, by his express words or by his conduct, lull the vendee into the reasonable belief that the right would not be insisted upon, in which case the seller will not be heard to gainsay his conduct. Further, in this regard, the text states that, if the delayed payments are accepted by the seller to an extent that it has become a matter of practice under any particular contract, the seller cannot justly claim, or be permitted to enforce, a default for such failure of prompt payment, without reasonable notice to the purchaser that he proposes to return to the letter of the agreement. Further, the text states that, if the contract itself provides that the acceptance of payment of delinquent installments shall not constitute a waiver of strict performance as to future installments, such a provision is valid and will be given effect, citing in support of this proposition the case of Lundberg v. Switzer, 146 Wash. 416, 263 P. 178, 179, 59 A. L. R. 131, where the following observations were made:

"The appellants cite a long line of cases from this and other courts holding that the right of forfeiture cannot be exercised without demand and a reasonable opportunity to comply after there has been a waiver of strict performance by the acceptance of delayed payments. About this rule there is no controversy, as it is

firmly written into the law. The question here is not as to the rule, but whether it applies where as in this case there is an express agreement by which the parties stipulated that acceptance of delayed payments should not be considered as a waiver of strict performance as to other payments or conditions under the contract. At the time of the sale the parties had a right to place in the contract any terms or conditions which were not unlawful or against public policy. Union Machinery & Supply Co. v. Thompson, 98 Wash. 119, 167 P. 95. In providing in the contract that acceptance of the delayed payments should not operate as a waiver of future payments, it cannot be said that the parties did anything which contravened any rule of law or went counter to public policy. Where the vendor has waived strict performance by accepting delayed payments, he may by due notice to the purchaser reinstate strict performance. Walker v. McMurchie, 61 Wash. 489, 112 P. 500. If the vendor has the right by notice to reinstate strict performance as to subsequent payments after having waived that performance by accepting delayed payments, it would seem to follow that the parties to the contract in the first instance, if they saw fit to do so, could agree that the acceptance of delayed payments should not operate to waive strict performance as to any future payments. In Pacific Finance & Invest. Co. v. Pierce, 48 Cal. App. 600, 191 P. 1115, it was held that the acceptance of installments when they were past due did not waive strict performance as to future payments where the contract expressly covenanted that the acceptance of payments after they became due should not operate as a waiver of the forfeiture provision of the contract. In none of the cases cited and relied on by the appellants was there a contract under consideration, so far as the opinions show, which contained a provision like or similar to that in this case where the parties expressly agreed that indulgence by the vendor as to the time of payments should not waive strict performance as to any future payments."

The text also cites the case of Pacific Finance Corporation v. Ellithorpe, 134 Or. 601, 280 P. 658, 289 P. 1058. In that case, quoting from the syllabus: "Where language of contract is not ambiguous, court must enforce contract in accordance with its provisions. Each case arising under conditional sales contract must be determined in light of wording of contract involved. Finance company accepting payments on automobile after due did not waive rights under conditional sales contract, where it provided such acceptance of payments would not constitute waiver." The conditional sale contract respecting the refrigerating plant installed in the Reno store contains this provision: "The title to the equipment specified remains in the Nevada Machinery & Electric Co. until full payment is made in cash. * * * The purchaser agrees to do everything necessary to protect the seller in his retention of title. * * * Upon default * * * the Nevada Machinery & Electric Co. may then, or at any time thereafter, enter the premises and remove the equipment. * * * Should the Nevada Machinery & Electric Co. not exercise its right of possession immediately upon the failure of the purchaser to live up to the terms of payment, the purchaser shall pay interest on deferred payments at the rate of 1% per month from the time said payments are due until they have been fully paid, or until possession has been taken by the Nevada Machinery & Electric Co."

The conditional sales contract which embraces the refrigerating plant installed in the Ely store contains this provision: "Title to the above described property shall be and remain in the seller. The title hereby reserved shall extend not only to the above described property, but to all substituted or added parts, equipment or additional property used in connection with the above described equipment or property. Said title shall continue in the seller until all sums above mentioned, and any and all other sums which may for any reason become owing by the buyer to the seller, and any notes

given therefor and judgments obtained upon such sums or upon said note, have been paid in full. No election or pursuit of one remedy by the seller shall be a bar to any other and no delay nor any other act except an express written declaration shall be deemed a bar to, or waiver of, any rights hereby reserved or given by law. * * * Upon default of any kind, according to the terms herein stipulated * * * the seller may then, or at any time thereafter, enter upon any premises upon which the above described property may be found, with or without process of law, without liability to itself, and remove said property. * * * Should the seller not exercise its right of possession immediately upon the failure of the purchaser to live up to the terms of payment, the purchaser shall pay interest on deferred payments at the rate of 1% per month from the time said payments are due until they have been fully paid, or until possession has been taken by the seller."

It appears that on November 2, 1929, the Piggly Wiggly Nevada Company entered into a further conditional sale contract embracing the Ely plant, which contains this provision: "The title to the above described property shall be and remain in the seller. * * * Said title shall continue in the seller until all sums above mentioned * * * have been paid in full. No election or pursuit of one remedy by the seller shall be a bar to any other and no delay nor any other act except an express written declaration shall be deemed a bar to, or waiver of, any right hereby reserved or given by law. * * * Upon default of any kind, * * * the seller may then, or at any time thereafter, enter upon any premises * * * and remove said property. * * * "

2. The reasonable interpretation of the provisions of the separate contracts is that the title to the property remained in the seller until the full purchase price was paid and the acceptance of payments on the contracts shall not constitute a waiver. The evident purpose of the provisions quoted was to avoid the necessity of giving notice, after acceptance of payments, that strict

compliance with the terms of the contract would be exacted. But for the expressed provisions contained in the contracts, we should be inclined to hold that petitioner, by his acts and the course of dealing between the parties for several years after default, could not justly claim, or be permitted to enforce, the default for the failure of the Piggly Wiggly Nevada Company to pay the full purchase price of the plants without reasonable notice that the seller proposed to return to the letter of the contract. However, as said in the numerous authorities bearing upon the subject, where a contract contains provisions like or similar to those in this case, we cannot nullify the contracts and make a new contract because of the pet principles of judicial tribunals that forfeitures are abhorred and that it is generally a judicial delight to come upon a situation where a default giving the right of forfeiture may logically be found to have been waived. Jones on Chattel Mortgages and Conditional Sales, supra.

Entertaining these views, we reach the conclusion that the contracts must control; wherefore the judgment and order appealed from are reversed, with directions to the court below to enter judgment for the petitioner and appellant in accordance with this opinion.