ALEXANDER MAHBAN, INDIVIDUALLY AND DBA PERSON-ALIZED NAME SHOP; AND DBA PERSIAN RUG SHOP, APPELLANT, *v.* MGM GRAND HOTELS, INC., DBA MGM GRAND HOTEL, RESPONDENT.

No. 14714

December 6, 1984                                              691 P.2d 421

---

*Bilbray & Gibbons* and *Lester A. Berman,* Las Vegas, for Appellant.

*Lionel Sawyer & Collins* and *Rodney M. Jean,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a summary judgment. Because genuine issues of fact have not been resolved, we must reverse.

Respondent, MGM Grand Hotel, leased floor space within the hotel "arcade" area to appellant, who operated two shops in the arcade. The lease agreements each contain a clause which permits either party to terminate the lease if "the Leased Premises are damaged or destroyed during the Lease Term to such an extent that they cannot be put into tenantable condition by Lessor within one hundred eighty (180) days after such damage or destruction." On November 21, 1980, the hotel was damaged by fire to an extent sufficient to invoke the right to terminate provided for in the leases.

On January 30, 1981, appellant received a letter from the MGM arcade manager informing appellant, in pertinent part, as follows:

> I would like to let you know additionally, that sometime late in February, our target date to re-open should be finalized. I hope to be able to notify you at that time when you will be able to begin remodeling within the arcade area.
>
> All plans for reconstruction must be submitted for approval, in advance of any work beginning, to me at my office . . . .

Appellant alleges that in reliance upon this letter he proceeded to order merchandise for restocking one of the shops.

On March 17, 1981, appellant received a letter from respondent which sought to terminate the leases for both shops pursuant to the destruction-of-premises section of the leases. Appellant thereafter filed the instant action, seeking, among other relief, money damages for breach of the lease agreements,[1] based on the contention that the January 30, 1981 letter induced his reasonable reliance on the indication therein that respondent would not terminate his leases. The district court concluded that, as a matter of law, appellant "could not have reasonably relied on the letter . . . because the letter contained no representation as to whether defendant MGM intended to waive its contractual rights" pursuant to the destruction-of-premises clause. We disagree, and therefore reverse.

[1]It appears that one of the shops was a month-to-month tenancy, which was duly terminated by a thirty day notice on April 23, 1981, thereby rendering appellant's claims upon that lease moot.

The primary issue here is whether the language of the letter, read in the light most favorable to appellant, is sufficient to support appellant's claim. *See* Mullis v. Nevada National Bank, 98 Nev. 510, 654 P.2d 533 (1982). Appellant contends on appeal that triable issues are established under the theory of equitable estoppel. In certain factual scenarios, there is a potential for both the theory of waiver and the theory of equitable estoppel to afford relief to an aggrieved party. Rights may themselves be waived by a lessor, or he may by his conduct become estopped to assert them. *See* Reno Realty v. Hornstein, 72 Nev. 219, 225, 301 P.2d 1051 (1956). It is unclear whether the district court relied only on the theory of waiver in granting summary judgment. We conclude, however, that triable questions remain on both the waiver and equitable estoppel theories.

This court has previously characterized equitable estoppel as generally comprised of the following four elements:

> (1) The party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped.

Cheqer, Inc. v. Painters & Decorators, 98 Nev. 609, 614, 655 P.2d 996, 998-99 (1982). The requirement of actual knowledge of the true facts on the part of the party to be estopped does not apply to a party whose affirmative conduct, consisting of either acts or representations, has misled another. 3 Pomeroy, Equity Jurisprudence § 809 pp. 217-18 (5th ed. 1941).

A waiver is the intentional relinquishment of a known right. Reno Realty v. Hornstein, *supra*. A waiver may be implied from conduct which evidences an intention to waive a right, or by conduct which is inconsistent with any other intention than to waive the right. Reynolds v. Travelers' Ins. Co., 28 P.2d 310 (Wash. 1934). *See also* Lindley & Co. v. Piggly Wiggly, 55 Nev. 458, 39 P.2d 903 (1935) (waiver may be inferred when the conduct of a conditional vendor is inconsistent with the idea that he still expects to enforce a return of the goods if the conditions are not performed). Whether there has been a waiver is a question for the trier of facts. Bowman v. Webster, 269 P.2d 960 (Wash. 1954).

We turn now to an examination of the contents of the letter. On January 30, 1981, more than two months after the fire, respondent wrote to appellant to inform him, in part, that "I hope to be able to notify you at that time [sometime late in February] when you will be able to begin remodeling within the arcade area." This language allows an inference of an intent on the part of respondent, as of the time of the letter, not to exercise its termination right. The letter further informs that "All plans for reconstruction must be submitted [to me] for approval, in advance of any work beginning, . . . ." Plans for reconstruction are generally acquired only at a substantial expense to one who obtains them. Although the record is unclear as to whether appellant actually invested in plans, the letter can be read to have encouraged acts or evidenced intent inconsistent with termination of the lease. Accordingly, we conclude that material questions of fact exist on both the waiver and estoppel issues.

Respondent contends, nevertheless, that equitable estoppel is a defense, not a cause of action for money damages. Although some jurisdictions agree with respondent's contention, we have not so limited the power of the courts of this state to seek and do equity. *See* Nevada Pub. Emp. Ret. Bd. v. Byrne, 96 Nev. 276, 607 P.2d 1351 (1980). Moreover, the underlying action in the present case sought damages for breach of the lease agreement. The doctrine of equitable estoppel has been raised as a bar to respondent's assertion of its right to terminate under the destruction-of-premises clause in the lease agreement.[2] As applied here, estoppel is, therefore, essentially a defense to a defense, rather than a claim for relief.

Because material questions of fact remain, the summary judgment was inappropriate. We therefore reverse the summary judgment against appellant, and we remand the case for further proceedings.

---

[2]Black's Law Dictionary 483 (rev. 5th ed. 1979) defines equitable estoppel as:

> The doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had.