MacKENZIE INSURANCE AGENCIES, INC., APPELLANT, v. NATIONAL INSURANCE ASSOCIATION, RESPONDENT.

No. 23035

May 19, 1994 874 P.2d 758

*Anderson, Pearl, Hardesty, Lyle, Murphy & Stone* and *Todd A. Bader,* Reno, for Appellant.

*Georgeson, McQuaid, Thompson & Angaran,* Reno, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

The summary judgment entered against plaintiff-appellant MacKenzie Insurance Agencies (MacKenzie) is reversed. There are issues of fact to be tried, and defendant-respondent National Insurance Association (NIA) is not entitled to judgment as a matter of law.

MacKenzie is a Nevada corporation doing business as an independent insurance agency that sells lines of insurance under agency agreements with various insurance companies. On January 30, 1989, MacKenzie entered into an agency agreement with

NIA that provided for a commission at the rate of fifteen percent of MacKenzie's total sales. The agency agreement, prepared by NIA, also contained the following termination provision:

> This agreement shall terminate at any time (1) by either party giving the other written notice, with or without cause, and (2) immediately without notice upon cancellation, revocation, or expiration of the Agent's license issued by the State. Termination shall cancel all authority granted to the Agent.

After signing the agreement, MacKenzie began placing policies with NIA at the contract rate of fifteen percent. Some time after the parties signed the contract, NIA sent MacKenzie a document styled as an "Addendum to the Agency Agreement," which purported to reduce MacKenzie's commission from fifteen to five percent effective May 15, 1990. MacKenzie continued to sell NIA policy renewals and new policies after NIA advised MacKenzie of its intention to reduce MacKenzie's commission rate to five percent. Throughout the period from January 30, 1989, to May 15, 1990, MacKenzie received its commissions at the contract rate of fifteen percent. After May 15, 1990, however, NIA paid commissions on new and renewal business at the rate of five percent, based upon the unilateral "Addendum."

On September 10, 1990, NIA sent to MacKenzie a letter indicating that NIA was terminating the parties' agency agreement. MacKenzie then filed an action against NIA claiming that NIA had breached its contract when it refused to pay the agreed-upon fifteen percent commission. NIA moved for summary judgment, which the district court granted.

The trial court ruled that since the relationship between MacKenzie and NIA was terminable by either party, with or without cause, the right of termination by written notice included the lesser right of imposing prospectively, changes in the conditions of the contract, including the terms of compensation. This is an incorrect interpretation of the parties' contract.

The written contract in question provides that either party could end the contract by giving written notice of termination to the other party. Neither party gave to the other the written notice of termination provided for in the contract; and, *prima facie*, the contract continued to be binding until it was terminated in accordance with its terms. The unilateral reduction in commission payments instituted by NIA does not release it from its contractual obligations for so long as the contract remained in effect.

The trial court incorrectly ruled that either party to the written contract had the "privilege of imposing prospectively, changes in the conditions of the contract." If this were true, and either party had actually had the "privilege" of *imposing* unwanted changes in the contract on the other, then there would be no point in having a written contract which set the commission percentage agreed to be paid. The contract gives the parties an option to *terminate* by giving *written* notice; it does not give either party the "privilege of imposing" unilateral changes "in the conditions of the contract." MacKenzie had the right to receive the fifteen percent commission rate agreed-upon by the parties until the contract was terminated in accordance with its terms, unless, of course, MacKenzie waived the required written notice or agreed expressly or impliedly to accept less than was provided for in the written contract. Whether MacKenzie and NIA entered into a new agreement or whether MacKenzie waived its rights under the written contract are factual questions that must be dealt with at trial. On this record, NIA is not entitled to judgment as a matter of law. The summary judgment is reversed.

Rose, C. J., and Young and Shearing, JJ., concur.

Steffen, J., dissenting:

I respectfully dissent.

The facts are essentially undisputed, and despite the majority's factual recital, I will necessarily refer to various facts of record in order to lend context to this dissent.

In entering into an agency contract with National Insurance Association (NIA), MacKenzie Insurance Agencies, Inc. (MacKenzie) agreed to a fifteen percent commission on total insurance sales placed with NIA. MacKenzie, an independent insurance agency that sells insurance pursuant to agency agreements with a number of insurers, also agreed, under the terms of the agency contract with NIA, to the following termination provision:

> This agreement shall terminate at any time (1) by either party giving the other written notice, with or without cause, and (2) immediately without notice upon cancellation, revocation, or expiration of the Agent's license issued by the State. Termination shall cancel all authority granted to the Agent.

Within several months after MacKenzie commenced selling NIA policies, NIA unilaterally executed an addendum to the agreement which, by its terms, reduced MacKenzie's commissions to five percent effective May 15, 1990. MacKenzie contends without record support, that it objected to the addendum. In

any event, MacKenzie continued to sell new NIA policies and policy renewals after the reduced commission rate became effective. Throughout the period from January 30, 1989, to May 15, 1990, MacKenzie received its commissions at the contract rate of fifteen percent. After May 15, however, MacKenzie accepted commissions on new and renewal business at the modified rate of five percent.

On September 10, 1990, MacKenzie received a letter from NIA indicating that it was terminating the agency agreement. Without challenging the propriety of the termination, MacKenzie filed an action against NIA alleging, *inter alia,* breach of contract in the unilateral reduction of MacKenzie's commission. NIA responded with a motion for summary judgment that was granted by the district court.

The trial court ruled that since the relationship between MacKenzie and NIA was terminable by either party, with or without cause, that right included the lesser right, in either party, of prospectively imposing changes in the provisions of the contract, including the terms of compensation. I am persuaded that the district court's reasoning is both compelling and legally correct.

The termination clause in the agency agreement provided that either party could terminate the agreement with or without cause upon written notice. MacKenzie insists that NIA's unilateral addendum could not effectively modify the agreement because there was no mutual agreement between the parties regarding the addendum.

"Typically, the insurer can change the compensation scale prospectively by simply sending [the agent] a general advisory memorandum to that effect, usually to be attached to the physical contract itself." 2 *Bertram Harnett et al., Responsibilities Of Insurance Agents And Brokers* § 8.05[2] (1992). In Mall Tool Co. v. Far West Equip. Co., 273 P.2d 652, 655 (Wash. 1954), the court was faced with a contract between a manufacturer and a distributor which could be terminated at the will of the manufacturer upon thirty days' notice. The *Mall Tool Co.* court concluded that because the contract was terminable at will, the manufacturer could propose a modification at any time as a condition of its continuance. Moreover, the court noted that the distributor had the choice of accepting or rejecting the modification, knowing that a refusal would result in the termination of the agreement. *Id.* at 655.

In the instant case, NIA presented MacKenzie with a modification of the original agreement. MacKenzie simply could have refused to sell or renew NIA policies under the reduced commission rate, thus precipitating either the termination of the agency agreement or a cancellation of the addendum. Instead, MacKenzie elected to continue writing and renewing NIA policies after

the effective date of the addendum, and accepted the reduced amount of the commission. By its conduct, MacKenzie accepted the terms of the addendum. *See* Adair Homes, Inc. v. Jarrell, 650 P.2d 180, 183 (Or. Ct. App. 1982) (conduct can manifest acquiescence in modification); Wal-Go Assoc. v. Leon, 624 P.2d 507, 510 (N.M. 1981) (course of dealing may modify an agreement); Resource Eng'g, Inc. v. Siler, 500 P.2d 836, 839 (Idaho 1972) (consent to modification of prior written contract may be implied from course of conduct consistent with asserted modification); and Fast v. Kahan, 481 P.2d 958, 961 (Kan. 1971) (assent to modification may be implied from circumstances and conduct).

Ordinarily, "[w]hile one party to a contract cannot alter its terms without the assent of the other parties, the fact of agreement may be implied from a course of conduct in accordance with its existence." 17A C.J.S. *Contracts* § 375, at 425 (1963). Although NIA did unilaterally modify the terms of the agreement, MacKenzie continued to secure new clients and to accept the reduced commission. Moreover, the nature of the contract in the instant case invested the parties with the power of prospective unilateral modification because of the right of the contracting parties to terminate the contract at any time without cause. Of necessity, the greater right in either party to terminate without cause included the lesser right to unilaterally and prospectively modify contract terms unilaterally.

Another basis for denying relief to MacKenzie exists in the form of a waiver. Waiver has been defined as "the intentional relinquishment of a known right." Mahban v. MGM Grand Hotels, 100 Nev. 593, 596, 691 P.2d 421, 423 (1984). "[W]aiver may be implied from conduct which evidences an intention to waive a right, by conduct which is inconsistent with any other intention than to waive the right." *Id.* A determination of whether there has been a waiver is usually a question best reserved for the trier of fact. *Id.* However, the circumstances of this action clearly indicate waiver as a matter of law.

In this instance, NIA did not purport to terminate or provide notice of termination of the agency agreement in the May 3, 1990, addendum to the agency agreement. Upon receipt of the addendum lowering the commission, MacKenzie continued to place insurance and renew policies with NIA. Despite MacKenzie's unsupported suggestion that it somehow protested the lowering of its commissions, it nevertheless accepted the five percent commission rate without complaint until NIA terminated the agency agreement.

I am forced to conclude from the record that MacKenzie knowingly and intentionally waived any right of complaint it may have had concerning the prospective reduction in its rate of

commission; it also elected not to exercise its contractual right to terminate the agreement, thus registering its unmistakable unwillingness to do further business with NIA at the reduced rate of commission. MacKenzie was at liberty to either terminate its relationship with NIA or continue under the modified terms of the contract for so long as the contract remained in effect. It chose the latter. I suggest that MacKenzie is hardly in a position to complain of a breach of contract when it operated under the amended terms, without complaint, for approximately five months prior to instigating this litigation.

In my opinion, the district court focused directly and properly on the dispositive issue in this case, and properly granted summary judgment in favor of NIA. I therefore dissent.