An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROBERT DILLON FRAMING, INC., A NEVADA CORPORATION, Appellant/Cross-Respondent, vs. CANYON VILLAS APARTMENT CORPORATION, A NEVADA CORPORATION (CANYON VILLAS), Respondent/Cross-Appellant. | No. 55897 |
| CANYON VILLAS APARTMENTS CORPORATION, A NEVADA CORPORATION (CANYON VILLAS), Appellant, vs. ROBERT DILLON FRAMING, INC., A NEVADA CORPORATION, Respondent. | No. 57122 |
| CANYON VILLAS APARTMENT CORPORATION, A NEVADA CORPORATION (CANYON VILLAS), Appellant, vs. ROBERT DILLON FRAMING, INC., A NEVADA CORPORATION, Respondent. | No. 57927 |

**FILED**

APR 17 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

These are a consolidated appeal and cross-appeal from a district court order entering judgment pursuant to a jury verdict in a construction defect case and appeals from post-judgment orders awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

SUPREME COURT
OF
NEVADA

(O) 1947A

13-11390

Robert Dillon Framing, Inc. (RDF), appeals the district court's final judgment awarding damages for breach of implied warranty of workmanship (Docket No. 55897). Canyon Villas Apartments cross-appeals from the same judgment and separately appeals the district court's partial awards of costs and attorney fees (Docket Nos. 57122 and 57927). We affirm in Docket No. 55897 and affirm in part and reverse and remand in part in Docket Nos. 57122 and 57927.

1. Standing

RDF argues that Canyon Villas should not have received damages because Canyon Villas did not have standing to sue RDF. Specifically, RDF argues that Canyon Villas lacks standing because it was not an intended third-party beneficiary of the subcontract between RDF and the general contractor, Olen Development. Standing is a question of law that this court reviews de novo. Arguello v. Sunset Station, Inc., 127 Nev. ___, ___, 252 P.3d 206, 208 (2011). Construction of a contract is also a question of law subject to de novo review. Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co., 124 Nev. 319, 322, 184 P.3d 390, 392 (2008).

An intended third-party beneficiary must show that the parties to the contract clearly intended to benefit him. Lipshie v. Tracy Inv. Co., 93 Nev. 370, 379-80, 566 P.2d 819, 824-25 (1977). Third-party beneficiary status requires more than the receipt of incidental benefits. 9 John E. Murray Jr., Corbin on Contracts § 44.9, at 73 (rev. ed. 2007).

Here, the subcontract explicitly lists the owner as one of the beneficiaries of the contract. Most important is paragraph 17, which states: "[t]his Agreement shall inure to the benefit of the Contractor and the Owner and to all successors, assigns or others claiming under or through them . . . ." (emphasis added). The meaning of the word "inure" is "to come into use," Black's Law Dictionary 900 (9th ed. 2009), and so it

follows that the agreement is "'to come into use' for the benefit of" the owner. It is also meaningful that paragraph 17 gives the owner a right to assign his interest because the owner could not assign rights if he did not have rights under the subcontract in the first place.

Several other provisions of the subcontract similarly establish that the owner is an intended beneficiary of the subcontract. For example, paragraph 8 reads: "Subcontractor hereby guarantees contractor and _owner_ of the project, against any loss or damage due to defects in workmanship or materials furnished under this subcontract"; if the subcontractor does not correct defects, "contractor or _owner_ may, at subcontractor's expense, furnish materials and/or labor to bring the work and materials up to the required standard" (emphasis added). And paragraph 18 indicates that the owner has standing because he may recover reasonable attorney fees or court costs incurred "in the prosecution of any suit or suits against the Subcontractor."

Accordingly, the district court did not err when it accorded standing to Canyon Villas. Indeed, the district court had a responsibility to honor the parties' intentions as plainly written, and it did so appropriately. See Renshaw v. Renshaw, 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980) (explaining that courts must honor party intentions where a contract is clear on its face).

2.   Economic loss doctrine

RDF argues that the economic loss doctrine bars Canyon Villas from recovering damages for breach of the implied warranty of workmanship because implied warranties sound in tort, not contract. RDF did not raise this issue, however, until after the jury returned a verdict.

Citing <u>Landmark Hotel v. Moore</u>, 104 Nev. 297, 299, 757 P.2d 361, 362 (1988), Canyon Villas argues that RDF cannot raise issues for the first time on appeal.[1]  Although Canyon Villas acknowledges that RDF raised economic loss in its post-verdict NRCP 50(b) motion, it maintains that the motion did not preserve the issue because RDF had not discussed economic loss in its pre-verdict NRCP 50(a) motion.  RDF responds that a waiver is an intentional relinquishment of a <u>known</u> right, <u>Mahban v. MGM Grand Hotels, Inc.</u>, 100 Nev. 593, 596, 691 P.2d 421, 423 (1984), and here it was not reasonably to be anticipated[2] that the jury would find breach of the implied warranty without finding breach of contract

Canyon Villas is correct that a point not urged in the trial court is deemed waived and will not be considered on appeal.  <u>Britz v. Consolidated Casinos Corp.</u>, 87 Nev. 441, 447, 488 P.2d 911, 915 (1971).  Canyon Villas is also correct that RDF's NRCP 50(a) motion did not discuss the economic loss doctrine.  Under NRCP 50(b) a party may "<u>renew</u> its request for judgment as a matter of law" (emphasis added).  From the rule's plain text, a party is allowed to renew, <u>i.e.</u>, repeat, the same arguments made in its initial NRCP 50(a) motion.  There is no

---

[1]RDF filed joinders to pretrial motions filed by other parties that addressed the economic loss doctrine.  The district court did not decide these motions because the filing parties settled and RDF did not separately press the economic loss issue prior to trial.

[2]After closing arguments, two theories went to the jury for consideration: breach of contract and breach of implied warranty of workmanship.  The contract required RDF to perform "the highest quality" work.  The implied warranty of workmanship required RDF to perform "reasonably skillful" work.  In an unusual outcome, the jury found that RDF provided work of "the highest quality" but somehow failed to achieve the "reasonably skillful" work required by the implied warranty.  Of note, the jury was not asked to clarify its verdict.

 

indication that new arguments are permissible. See 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537, at 606-16 (2008) ("Since the post-submission motion is nothing more than a renewal of the earlier motion made at the close of the presentation of the evidence, the case law makes it quite clear that the movant cannot assert a ground that was not included in the earlier motion."). Accordingly, RDF's NRCP 50(b) motion did not preserve its economic loss argument.

Nonetheless, even accepting for purposes of discussion that no waiver occurred, RDF's economic loss doctrine challenge still fails.

The economic loss doctrine precludes recovery of economic losses in tort actions when the plaintiff has not suffered personal injury or damage to his property other than damage to the defective item or condition itself. Calloway v. City of Reno, 116 Nev. 250, 262, 993 P.2d 1259, 1267 (2000), overruled in part by Olson v. Richard, 120 Nev. 240, 244, 89 P.3d 31, 33 (2004) (explaining that economic loss doctrine does not bar recovery for negligence claims brought under NRS Chapter 40). The economic loss doctrine does not, however, preclude a party from recovering purely economic losses under a contract because contract law seeks to enforce the expectancy interests, including standards of quality, created by agreement between parties. Id. at 260, 993 P.2d at 1265. And so when a party seeks purely economic damages as recompense for unmet expectations, the economic loss doctrine does not bar the claim. Similarly, this court does not apply the economic loss doctrine to warranty cases because warranties are intimately connected to contracts. Id. at 257, 993 P.2d at 1264.

Calloway's logic precludes application of the economic loss doctrine here. An implied warranty of workmanship accompanies a

service contract as a matter of law. In this covenant, the performing party promises he will perform with care, skill, reasonable expediency, and faithfulness. 23 Richard A. Lord, <u>Williston on Contracts</u> § 63:25, at 525 (4th ed. 2002). And because the warranty of workmanship addresses the <u>quality</u> of workmanship expected of a promisor, the warranty sounds in contract.

We therefore reject RDF''s economic loss doctrine challenge.

3.    <u>Expert evidence</u>

Next, RDF contends that the district erred by denying its motions to exclude extrapolation evidence and allowing Dr. Lorden to give an expert opinion during trial. Its contentions are twofold: first, extrapolation is inappropriate where multiple units are involved because of the potential for variance, and second, Dr. Lorden's testimony did not satisfy the requirements[3] articulated in <u>Hallmark v. Eldridge</u>, 124 Nev. 492, 498, 189 P.3d 646, 650 (2008), because it was unreliable and unhelpful to the jury. Both claims are without merit.

This court has not prohibited extrapolation evidence except where it was used in a pre-litigation notice of constructional defects or to certify a class. <u>See</u> <u>D.R. Horton v. Dist. Ct.</u>, 123 Nev. 468, 472, 168 P.3d 731, 735 (2007); <u>Shuette v. Beazer Homes Holdings Corp.</u>, 121 Nev. 837, 859, 124 P.3d 530, 545 (2005). In both of these cases, the discussion centered on whether the subset of homes that plaintiff had sampled was representative—an issue that was particularly problematic because these

---

[3]In <u>Hallmark v. Eldridge</u>, 124 Nev. 492, 189 P.3d 646 (2008), this court explained that expert testimony must satisfy three requirements: (1) the expert must be qualified, (2) the expert's specialized knowledge must assist the jury, and (3) the expert must limit his testimony to matters within the scope of his knowledge. 124 Nev. at 498, 189 P.3d at 650.

 

cases involved separate single-family homes with varied defects. D.R. Horton, 123 Nev. at 479-80, 168 P.3d at 739-40; Shuette, 121 Nev. at 859, 124 P.3d at 545; see Beazer Homes Holding Corp. v. Dist. Ct., 128 Nev. ___, ___, 291 P.3d 128, 135-36 (2012). Here, Canyon Villas is not suing in a representative capacity. Unlike D.R. Horton and Shuette, it is not necessary to determine the exact damages each individual owner is entitled to and there is no risk that certain plaintiffs will receive a windfall while others would be undercompensated or unfairly precluded.

Further, the district court did not abuse its discretion when it deemed Dr. Lorden's testimony reliable and helpful. RDF does not dispute Dr. Lorden's qualifications in the field of statistics. Although the sample he examined was small compared to the number of apartments in the complex, Dr. Lorden testified that his list of properties to inspect included approximately equal numbers of one-, two-, and three-bedroom apartments, as well as an equal number of apartments on the first and second stories. Moreover, the list of apartments of each type was generated by a random-number formula to ensure that the sample was random. And as an added level of randomness, experts in the field used random numbers to determine which window to test in each apartment. Because the sample was random, Dr. Lorden testified that it was statistically insignificant that the field experts only examined 2% of the windows. In fact, according to Dr. Lorden, a survey of larger or smaller size would have yielded the same result and the same margin of error. As such, data based on the small sample was reliable and provided the jurors with helpful information.

Thus, the district court did not abuse its discretion by admitting Dr. Lorden's testimony.

4.    <u>Attorney fees and costs</u>

Canyon Villas argues that it has a contractual right to all of its requested attorney fees, not just the fees incurred after its offer of judgment. Additionally, Canyon Villas argues that the district court erred in refusing to award paralegal fees as part of attorney fees. This court reviews a district court's determination as to the reasonableness of an attorney fee claim for an abuse of discretion. <u>Albios v. Horizon Communities, Inc.</u>, 122 Nev. 409, 417, 132 P.3d 1022, 1027-28 (2006). However, whether a statute or contract legally authorizes a fee award presents a question of law, which we review de novo. See <u>id.</u>; <u>Davis v. Beling</u>, 128 Nev. ___, ___, 278 P.3d 501, 515 (2012).

Attorney fees were not allowed at common law, <u>Jensen v. Pradere</u>, 39 Nev. 466, 471, 159 P. 54, 55 (1916), and can only be recovered when "'authorized . . . by a statute, rule or contract.'" <u>Davis</u>, 128 Nev. at ___, 278 P.3d at 515 (quoting <u>U.S. Design & Constr. v. I.B.E.W. Local 357</u>, 118 Nev. 458, 462, 50 P.3d 170, 173 (2002)). "'Where a contract provision purports to allow attorney's fees in an action arising out of the terms of the instrument,'" conventional rules of construction apply. <u>Dobron v. Bunch</u>, 125 Nev. 460, 464, 215 P.3d 35, 37-38 (2009) (quoting <u>Campbell v. Nocilla</u>, 101 Nev. 9, 12, 692 P.2d 491, 493 (1985)). Thus, "'[e]very word must be given effect if at all possible,'" and a court should avoid an interpretation that makes a contract provision meaningless. <u>Musser v. Bank of America</u>, 114 Nev. 945, 949, 964 P.2d 51, 54 (1998) (alteration in original) (quoting <u>Royal Indem. Co. v. Special Serv.</u>, 82 Nev. 148, 150, 413 P.2d 500, 502 (1966)).

Paragraph 18 of the contract broadly provides that the owner is entitled to "any and all reasonable attorneys' fees and court costs which may be paid or incurred, growing out of or caused by the Agreement or

Supreme Court
of
Nevada

(O) 1947A

performance hereunder." This language gave Canyon Villas the contractual right to recover all reasonable fees that it incurred in litigating this dispute with RDF—regardless of whether the underlying cause of action sounded in tort or contract. See Santisas v. Goodin, 951 P.2d 399, 405 (Cal. 1998) ("If a contractual attorney fee provision is phrased broadly enough . . . it may support an award of attorney fees to the prevailing party in an action alleging both contract and tort claims".). For the same reason, it was error, given Canyon Villas' contract right to fees, for the district court to limit the award to the fees incurred after the offer of judgment. Rather, as in Davis, Canyon Villas should have been awarded reasonable fees dating back to the inception of the litigation with RDF. Davis, 128 Nev. at ___, 278 P.3d at 515. We therefore reverse and remand for the district court to augment its fee award consistent with this order and our decision in Davis.

The district court also abused its discretion to the extent that it excluded paralegal fees from the attorney fees award because reasonable attorney fees, which are recoverable under paragraph 18 of the subcontract, include paralegal fees. Paralegals provide essential, cost-effective services that help attorneys represent clients. See Missouri v. Jenkins, 491 U.S. 274, 285, 288 (1989). Limiting fee recovery to members of the bar, who bill at a substantially higher rate, would cost everyone, including the nonprevailing party, more money. Id.

Canyon Villas also argues that the district court erred in denying it the full $369,000 in costs that it requested.[4] The determination

---

[4]Canyon Villas does not press the argument on appeal that it is entitled to costs under paragraph 18 of the contract. Hence, we need not address that issue. See Edwards v. Emperor's Garden Rest., 122 Nev. 317, 333 n.38, 130 P.3d 1280, 1288 n.38 (2006).

SUPREME COURT
OF
NEVADA

(O) 1947A

9

of allowable costs is within the sound discretion of the trial court, and this court will not disturb the district court's decision absent an abuse of that discretion. <u>Bergmann v. Boyce</u>, 109 Nev. 670, 679, 856 P.2d 560, 565-66 (1993).

In <u>Schouweiler v. Yancey Co.</u>, this court explained that when evidence on which the lower court's judgment rests is not included in the record on appeal, it is assumed that the record supports the district court's findings. 101 Nev. 827, 831, 712 P.2d 786, 789 (1985). Here, the basis for the determination of allowable costs is unclear and the record contains no findings of fact or conclusions of law that decisively show which theory of recovery the district court used. Accordingly, we must presume that the district court did not abuse its discretion in limiting the costs awarded to Canyon Villas, and we therefore affirm the costs award. In light of the foregoing, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order as to attorney and associated paralegal fees.

_____, C.J.
Pickering

_____, J.          _____, J.
Gibbons                               Hardesty

_____, J.          _____, J.
Parraguirre                           Douglas

_____, J.          _____, J.
Cherry                                Saitta

cc:    Ara H. Shirinian, Settlement Judge
Lewis & Roca, LLP/Las Vegas
Parker & Edwards
Berding & Weil, LLP
Thomas D. Harper, Ltd.
Springel & Fink
Lemons, Grundy & Eisenberg
Maddox, Isaacson & Cisneros, LLP
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A