An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

SAFETY INDUSTRIES, INC., A NEVADA CORPORATION; DRIVER EDUCATION SUPPLIES, INC., A NEVADA CORPORATION; AND THE LIONEL HASTINGS TRUST,
Appellants,
vs.
GREGORY A. PERKINS,
Respondent.

No. 61671

FILED

SEP 2 9 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

SAFETY INDUSTRIES, INC., A NEVADA CORPORATION; DRIVER EDUCATION SUPPLIES, INC., A NEVADA CORPORATION; AND THE LIONEL HASTINGS TRUST,
Appellants,
vs.
GREGORY A. PERKINS, AN INDIVIDUAL,
Respondent.

No. 63014

## ORDER OF AFFIRMANCE

These are consolidated appeals from post-judgment orders resolving a traversing affidavit enforcement matter and awarding partial attorney fees and costs. Eighth Judicial District Court, Clark County; Allan R. Earl, Judge.

Lionel Hastings, the former president, sole director, and sole shareholder of the appellant Safety Industries, Inc. (Safety), does not mince words: in his deposition he expressed his intent to dissolve Safety and auction its assets in order to avoid satisfying a default judgment in favor of the respondent, Gregory A. Perkins, in a personal injury action,

14-32214

and thus obtain the benefit of "closing out all past liabilities," and "washing out all the bad history of these kinds of situations." True to his plan, Hastings sold Safety's assets at auction to the sole bidder, the appellant Lionel Hastings Trust (the Trust), of which Hastings was the lone trustee, for $2,500 (1.5 percent of their book value). The Trust then transferred the assets to the appellant Driver Education Systems (DES)— a corporation that Hastings had organized two days prior that conducted the same business, in the same building, with the same three-person staff, using the same post office box, phone number, and web address, and which manufactured, shipped, and advertised the same products, in the same packaging and catalogs as Safety previously had—and loaned DES $125,000 in exchange for 100% of DES's shares.

Perkins filed a traversing affidavit against Safety, DES, and the Trust under NRS 31.330, alleging that DES had obtained Safety's assets in violation of Nevada's Uniform Fraudulent Transfer Act (NUFTA), NRS Chapter 112, as a constructive fraudulent transfer.[1] To succeed on his claim, Perkins needed to demonstrate that Safety transferred its assets without receiving a "reasonably equivalent value" for them. NRS 112.180(1)(b); NRS 112.190(1). The district court determined that Safety had not received such value and that the transfer was therefore constructively fraudulent, and awarded Perkins a judgment for $200,000 and attorney fees of $78,500. Safety, DES, and the Trust appeal the court's determination, its rejection of their equitable defenses, and its award of attorney fees.

---

[1] In the court below, Perkins also argued this was an actual fraudulent transfer, an argument the district court rejected and that is not raised again on appeal.

When deposed, Hastings admitted that he was prepared to pay at least $7,500 for the assets in question, so even under the most conservative estimation Safety received only one-third of the market value of its assets. And in an email to Perkins, Hastings indicated that Safety's assets actually had a book value of $200,000, 80 times what the Trust paid. An independent economist valued the property sold at auction even higher, at $300,000. Moreover, a "reasonable" valuation should be an impartial one, *Black's Law Dictionary* 1265, 595 (6th ed. 1990) (defining "reasonable" as "[f]air . . . under the circumstances," and "fair" as "[h]aving the qualities of impartiality and honesty; free from . . . self-interest"), but the Trust was the lone bidder on the assets, and was directed and funded by the owner of those assets, seeming to preclude this possibility. *See In re Murphy*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005) (questioning whether value can be "reasonably equivalent" when there are "no market forces at work at all").

Further, though the appellants argue that *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994)—wherein the United States Supreme Court said that "a reasonably equivalent value, for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with," *id.* at 545 (internal quotation marks omitted)—controls the outcome, it is not clear that *BFP* should apply outside the foreclosure context at all. Moreover, though *BFP* has been extended to apply to land sale contract forfeitures, *see In re Vermillion*, 176 B.R. 563, 569 (Bankr. D. Or. 1994); *McCanna v. Burke*, 197 B.R. 333, 339-40 (D.N.M. 1996), and tax foreclosures, *see In re Grandote Country Club Co., Ltd.*, 252 F.3d 1146, 1152 (10th Cir. 2001); *In re Fisher*, 355 B.R. 20, 22-23 (Bankr. W.D. Mich.

SUPREME COURT
OF
NEVADA

(O) 1947A

2006), these circumstances, unlike the auction in question here and like foreclosure sales, involve: (1) the forced sale of real property; (2) sales conducted pursuant to legislative controls; (3) competitive bidding; and (4) sellers motivated to obtain the highest price. Thus even if we might, given some hypothetical set of facts, extend *BFP* to situations other than foreclosure sales, this case—where an indebted owner who had previously touted the economic benefits of fraudulent transfer conducted (1) an unforced sale of personal corporate property; (2) in the absence of legislative controls; (3) to the sole bidder at auction; and (4) where any proceeds of which would only go to satisfy a "a crock of bull" judgment that he felt, "[m]orally," no obligation to pay—does not present them.

Thus the district court did not clearly err by finding that $2,500 was not "reasonably equivalent" to the value of Safety's property sold at the auction (whether that value was $7,500, $200,000, or $300,000), or by determining that equity could not offer the appellants relief. *See Herup v. First Bos. Fin., LLC*, 123 Nev. 228, 237, 162 P.3d 870, 876 (2007) (noting that the determination of reasonably equivalent value is a factual finding); *Mahban v. MGM Grand Hotels, Inc.*, 100 Nev. 593, 596, 691 P.2d 421, 424 (1984) (noting that a determination of the availability of equitable relief due to waiver is a factual finding). One who seeks equity cannot do so with unclean hands, *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 124 Nev. 272, 276, 182 P.3d 764, 767 (2008), and by arguing that they disclosed their intent to fraudulently transfer assets to Perkins (and that through his "acquiescence" to their plan he thus estopped or waived his claims), the appellants also admit their misconduct. Also, the equitable defenses asserted do not defeat the constructive fraud claims asserted. *Cf.*

*Monastra v. Konica Bus. Machs., U.S.A., Inc.*, 51 Cal. Rptr. 2d 528, 534 (Ct. App. 1996) ("It simply does not comport with this court's sense of justice or sound public policy to say that if A gives notice that he is about to cheat B, he then has a license to do so.").

Only the appellants' attorney fees challenge remains. According to the appellants, attorney fees for work performed prior to the filing of the traversing affidavit were awarded in error because NRS 31.340 only permits the award of attorney fees for post-filing work. But there is nothing in the plain language of the statute that would so limit attorney fee awards:

> New matter in the affidavit replying to the answer of the garnishee . . . shall be tried in the same manner as other issues of like nature . . . ; but if the verdict or finding is as favorable to the garnishee as the garnishee's answer, the garnishee shall recover costs of the proceeding against the plaintiff, together with a reasonable attorney's fee, *otherwise the plaintiff shall recover costs against the garnishee, together with a reasonable attorney's fee.*

NRS 31.340 (emphasis added). And the appellants strained reading to the contrary—that the statute says "be tried"; a "trial" is an "action"; an "action" is commenced upon filing of the formal complaint; a traversing affidavit is a de facto complaint; and that therefore attorney fees can be awarded only for the period after the traversing affidavit is filed—is unavailing because "be tried" refers only to the procedure for deciding the pleadings, and does not in any way limit or modify the phrase "reasonable attorney's fees." The appellants' argument that the phrase "of the proceeding" temporally limits the award to the period after this de facto complaint was filed likewise fails because "of the proceeding" modifies *costs to the garnishee*, not *fees to the plaintiff.* Thus "[w]e think the better

SUPREME COURT
OF
NEVADA

(O) 1947A

view is that [pre-affidavit] investigation and evaluation of the potential claim is part of the process and expense of litigation," *First Nat. Bank of Arizona v. Cont'l Bank*, 673 P.2d 938, 944 (Ariz. Ct. App. 1983), and so that the district court's award of attorney fees was proper.

We therefore AFFIRM.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Saitta

cc:   Hon. Allan R. Earl, District Judge
      Michael H. Singer, Settlement Judge
      Marquis Aurbach Coffing
      Lewis Roca Rothgerber LLP/Las Vegas
      Eighth District Court Clerk